August 26, 2022

**Via ECF**
The Honorable Philip M. Halpern
United States District Judge
U.S. District Court, Southern District of New York
500 Pearl Street, Room 1950
New York, NY 10007

      Re:    *Ramirez v. Marriott International, Inc., et al*, Case No. 7:20-cv-02397-PMH;
                  **Settlement Agreement and Joint Statement**

Dear Judge Halpern:

      Following a mediation on May 23, 2022, the parties reached a settlement in principle to resolve all claims in this action. They now seek approval of their settlement as fair and reasonable in accordance with *Cheeks v. Freeport Pancake House, Inc*., 796 F.3d 199 (2d Cir. 2015). This letter is submitted jointly by Plaintiff and Defendants in accordance with Docket entry No. 125, requesting that the parties prepare a joint statement explaining the basis for the proposed settlement.

    **I.**    **Factual and Procedural Background**

      Plaintiff filed his Class and Collective Action Complaint against Defendants Marriot International, Inc. and The Ritz-Carlton Hotel Company, LLC ("Defendants") on March 18, 2020 (ECF 1) and then filed a First Amended Complaint on April 17, 2020 (ECF 8) and a Second Amended Complaint on July 9, 2020 (ECF 32). Defendants filed their Partial Motion to Dismiss the Second Amended Complaint on December 18, 2020 (ECF 43), which Plaintiff opposed (ECF 42). Defendants' motion was denied (ECF 90) and they filed their Answer on September 27, 2021 (ECF 93).

      The operative complaint alleges that Defendants operate a chain of hotels, restaurants, and resorts, including the Ritz-Carlton, Westchester in White Plains, New York where Plaintiff was employed as an in-room dining server ("IRD server") and banquet worker from 2015 to 2019. Second Amended Complaint ("SAC") ¶¶ 33-34. Plaintiff alleges that Defendants routinely added a mandatory service charge and delivery fee to food and beverage bills for in-room dining services, which Plaintiff alleges customers reasonably believed to be a gratuity to the service staff, but Defendants failed to remit the entirely of that fee to the non-managerial IRD service staff as gratuity. *Id.* ¶¶ 35-37. Defendants deny all these allegations (ECF 93).

      Plaintiff further alleges that putative Class and Collective members also performed work while off-the-clock, with Defendants' knowledge, and were denied compensation for this time spent performing tasks such as cleaning, stocking supplies, setting up their workstations, and performing various other tasks before clocking in and after clocking out for their shifts. *Id.* ¶ 38. Plaintiff alleges this is due to certain clock-in and clock-out procedures. *Id*. Plaintiff alleges this


results in a failure to pay wages, including at an overtime rate. *Id.* ¶ 39.  Defendants deny all these allegations (ECF 93).

Plaintiff also alleges that Defendants failed to maintain true and accurate wage notices and wage statements under the New York Labor Law. *Id.* ¶¶ 41-42. Defendants deny all these allegations (ECF 93).

In sum, Plaintiff brought the following causes of action to challenge Defendants' policies and practices of failing to: (1) pay Plaintiff, and putative  Collective members overtime wages as required under the FLSA; (2) pay overtime compensation to Plaintiff and putative Class members for "off-the-clock" work as required by New York Labor Law; (3) compensate Plaintiff and putative Class members the additional wages required by the New York spread-of-wages law; (4) remit all service fee surcharges to Plaintiff and putative Class members; (5) remit the entirety of the IRD service fee surcharges to non-managerial service workers and thereby becoming unjustly enriched; (6) provide Plaintiff and putative Class members accurate, itemized wage statements as required by N.Y. Lab. Law § 195(3); and (7) provide accurate and proper written notice as required by N.Y. Lab. Law § 195(1). SAC ¶ 5.  Defendants deny all these allegations and claims and maintain, *inter alia,* that at all relevant times they properly and fully paid Plaintiff and putative Class and Collective members (ECF 93).

The parties participated in a mediation on May 23, 2022, before Court-appointed mediator Daniel Engelstein, where the parties reached a settlement in principle to resolve all claims in this action.

## II.   Settlement Terms

The parties agreed to settle this action for $445,000.00, a non-reversionary amount which shall satisfy all monetary obligations set forth in the Settlement, including to fully resolve and satisfy any and all amounts to be paid to all Participating Class Members, Court-approved Costs and Fees, any Service Awards, and the fees and costs of the Settlement Claims Administrator. *See* Settlement Agreement and Release ("Settlement" or "Agreement"), attached hereto as Exhibit 1. The employer's portion of the employment taxes will be paid by Defendants separate and apart from the Gross Settlement Fund (subject to certain provisions in the Settlement Agreement that allow the use of certain unclaimed amounts to reimburse Defendants for the employer's share of the employment tax obligations). Settlement at § 3.1.

The terms and conditions reflected in the Settlement represent a reasonable compromise of the disputed issues presented in this action. The parties seek approval of the overall breakdown as follows. Of the $445,000.000 Gross Settlement Fund, Class Counsel requests $279,347.43 for fees and $15,652.57 for costs, for a total of $295,000.00. Settlement at § 3.4. Named Plaintiff Ramirez will be provided a Service Award of up to $10,000.00, and Opt-In Boateng will be provided a Service Award of up to $2,500.00. Settlement at § 3.5. These awards are made in exchange for their services rendered to the Class and Collective members, and in exchange for their general release of all claims. Settlement at §§ 3.5, 4.1. The Settlement Claims Administrator will also be paid $7,989.00 (Seven Thousand, Nine Hundred and Eighty-Nine Dollars and Zero Cents) for the services rendered and the resulting Net Settlement Amount of approximately $129,511.00 will be allocated to the Participating Class Members. Settlement at §§ 1.23, 3.6.



The Settlement contemplates that all Participating Class Members who cash their settlement checks by the check cashing deadline will release all claims that were brought or could have been brought under the FLSA and New York State law based on or arising out of the factual predicates and/or allegations in the Complaint against Defendants and/or any of the Releasees in connection with work they performed in in-room dining or banquets at the Ritz Carlton Westchester ("RCW"), based on events that took place from March 18, 2014 through full execution of the Agreement. Settlement at § 1.35(A). All Participating Class Members who do not timely cash their settlement checks will nevertheless release all non-FLSA wage and hour claims that were or could have been asserted in the action in connection with work performed in in-room dining or banquets at the RCW for Defendants that arise from a common nucleus of operative facts and circumstances based on events that took place from March 18, 2014 through full execution of the Agreement. Settlement at § 1.35(B).

The Settlement also includes a detailed process which the Settlement Claims Administrator will abide by in effectuating the Settlement. Settlement at § 2.2(C). Under that process, within 30 days of the execution of the Settlement, or as otherwise ordered, Defendants shall provide the Settlement Claims administrator with the class list[1]. Settlement at § 2.5(A). After entry of the Approval Order, the Settlement Claims Administrator shall mail to each Class member the Court-approved notice informing them of the Settlement and his or her rights, including their ability to object to, opt-out of, or participate in the Settlement. Settlement at § 2.5(B). If a notice is returned as undeliverable, the Settlement Claims Administrator shall seek to obtain a current address by conducting a skip-trace, or other search, and shall re-mail the notice to such current address if found. Settlement at § 2.5(C).

Defendants shall deposit the Gross Settlement Fund plus the employer's share of the Employment Taxes as calculated by the Settlement Administrator into the Qualified Settlement Fund ("QSF") within the latter of (a) 15 days after the Opt-out Deadline or (b) 15 days from the date the Settlement Claims Administrator notifies Defendants that it has established the QSF and provides wiring instructions. Settlement at § 3.2. Within 10 days after the QSF has been fully funded, the Settlement Claims Administrator shall mail settlement checks to Participating Class members, mail any Service Awards to Plaintiff Ramirez and Opt-in Plaintiff Boateng, wire-transfer payment to Class Counsel in the amount of the Court-approved Fees and Costs, and pay all Employment Taxes to the appropriate government authorities due at such time. Settlement at § 3.7(A). Each Participating Class Member's award shall be based *pro rata* on the actual hours worked or wages earned by the Participating Class Member as an IRD Server at the RCW and no Participating Class Member shall receive less than $50.00. Settlement at § 3.6. Payments made to Participating Class Members will be deemed 50% W-2 wage income and 50% 1099 miscellaneous income. Settlement at § 3.3. Checks shall remain valid for 180 days, after which any unclaimed monies from uncashed checks in the QSF shall be allocated first to pay any late claims, second to reimburse Defendants for their payment of the employer's share of the Employment Taxes, and then all excess funds shall be provided as *cy pres* to Children's Miracle Network Hospitals. Settlement at § 3.7(B).

---

[1] Within 15 days of approval of the Settlement, Defendants shall provide Class Counsel a Class List which will only contain unique numerical identifiers to identify the Class Members and the Class Members' first name and last initial and will not include last known addresses and phone number or social security numbers.



The parties believe that the Settlement reflects a reasonable compromise of the issues presented in this action.

### III. *Cheeks* Analysis

In reviewing a settlement for approval, the Court must find that the settlement of FLSA claims is "fair and reasonable." *Velasquez v. SAFI-G, Inc.*, 137 F. Supp. 3d 582, 584 (S.D.N.Y. 2015); *see also Cheeks v. Freeport Pancake House Inc.*, 796 F.3d 199 (2nd Cir. 2015). In determining whether an FLSA settlement is "fair and reasonable," courts consider "(1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion." *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 176 (S.D.N.Y. 2015) (citing *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012)).

#### A. The Settlement Agreement is Fair and Reasonable

The proposed Settlement is both fair and reasonable. As described above, Defendants have agreed to pay a Gross Settlement Fund of $445,000 to settle this matter, of which the approximately 50 Class Members[2] will receive the Net Settlement Fund (i.e., the Gross Settlement Fund less Court-approved Attorneys' Costs and Fees, the Service Awards, and fees and costs of the Settlement Claims Administrator). *See* Exhibit 1.

*The Range of Possible Recovery*

Based on Defendants' records, Class Counsel estimated that the combined maximum amount recoverable based on the claims alleged if the Class Members prevailed on every aspect of their claims would be approximately $650,180.[3] When considering the Gross Settlement Amount and subtracting the fixed amounts for Attorneys' Costs and Fees ($295,000.00), Settlement Claims Administrator fees and costs ($7,989.00) and the Service Awards ($12,500,00), there would be approximately $129,511.00 in the Net Settlement Fund to be distributed to the Participating Class Members. This is approximately 20% of the anticipated recovery Class Counsel calculated. This is fair and reasonable as a percentage amount. *See Gervacio v. ARJ Laundry Servs. Inc.*, No. 17-cv-9632 (AJN), 2019 U.S. Dist. LEXIS 12760, 2019 WL 330631, at *1 (S.D.N.Y. 2019) (approving FLSA settlement that would provide the plaintiff "approximately 20 percent of the maximum possible recovery amount"; see also *Beckert v. Ronirubinov*, No. 15 Civ. 1951 (PAE), 2015 U.S. Dist. LEXIS 167052, 2015 U.S. Dist. LEXIS 167052, at *2 (S.D.N.Y. Dec. 14, 2015) (approving a settlement of approximately 25% of the maximum possible recovery). When the total estimated recovery amount is divided by the approximately 50 employees at issue, this provides an average award of approximately $2,590.22 per individual.

---

[2] Defendants represented that at the time of mediation, there were approximately 50 individuals as part of the Settlement Class. Since then, the RCW has not been in operation, so the parties do not anticipate that the number of eligible employees has increased.

[3] This assumes 0.5 hours of off-the-clock unpaid overtime per week per Class Member based on the average overtime rate for the group, violation of the spread of hours law for 8% of shifts, failure to remit approximately 15% of the total service charges and delivery fees, and the maximum $5,000 per Class Member for each of the wage notice and wage statement claims.


This amount is fair and reasonable as a percentage amount, but also "in light of the legal and evidentiary challenges that would face the plaintiff[] in the absence of a settlement." See *Angamarca v Hud-Moe LLC*, No. 18-CV-1334(RA), 2018 US Dist LEXIS 212518 (S.D.N.Y. 2018) (quoting *Lopez v. Poko-St. Anns L.P.*, 176 F. Supp. 3d 340, 342 (S.D.N.Y. 2016)). Defendants here strongly contest liability, including, *inter alia,* that the Class Members performed work off-the-clock, that the timekeeping system prevented these individuals from recording any hours, and any violations with regard to the wage notice and wage statements, service charges and delivery fees. Defendants also strongly contest that collective or class treatment is appropriate in this case, except for settlement purposes, Defendants dispute Plaintiff's damage calculations, and a risk exists that even if Plaintiff were successful, the amount he could ultimately recovery would be far less than that settled for, given that his calculations assume full recovery for all claims.

Taking into account these risks, and the percentage of the anticipated recovery based on the maximum possible amount recoverable, Plaintiff believes the Settlement is a fair compromise of all the claims.

*The Settlement Will Enable the Parties To Avoid Anticipated Burdens And Expenses and Litigation Risk*

The Settlement will prevent unnecessary expense by the Court, the parties, and their counsel, of both time and resources. Significantly, the parties will save time and expense of drafting and opposing dispositive motions, motions for collective and/or class certification (and, if necessary, decertification), and extensive pre-trial preparation, which would be the next steps in this litigation. This would have required hours of billing for all parties involved, especially because Defendants ardently contested the allegations in the operative complaint and the ability to proceed on a class or collective basis, as described above. By settling this matter at this juncture, the parties minimize the risks of litigation for all involved—the Class Members are assured speedy and merited payment of the Settlement awards and Defendants are assured quicker dismissal of the action.

The benefit of a quick and fair settlement, when weighed against the litigation risks and burdens associated with protracted litigation, weigh in favor of approval of this proposed Settlement.

*Arms-Length Bargaining and the Possibility of Fraud or Collusion*

The Parties reached a settlement after completing discovery whereby Defendants produced hundreds of pages of representative documents, including documents and materials relating to the timekeeping system and procedures at the RCW, RCW sample IRD menus, IRD bills, IRD receipts and IRD service charge calculations during the relevant time period. Further, the parties negotiated all the terms and conditions of the Settlement at arms' length, including by way of Court-appointed mediation on May 23, 2022 and several meet and confer calls thereafter to iron out the terms of the Settlement. Both Class Counsel and Defendants' counsel are experienced litigators in the field of wage and hour class and collective actions. Plaintiff and Defendants are aware of the terms of the Settlement, and each signed the Settlement, signaling their approval of the Settlement and safeguarding against fraud or collusion.

### B. The Proposed Award of Attorneys' Fees Is Fair and Reasonable

Plaintiff submits that the proposed attorneys' fees are also fair and reasonable. "While a court can award attorney's fees based on either the lodestar calculation—the hourly rate times the number of hours worked—or a percentage of the settlement award, '[c]ounsel must provide a factual basis for a fee award, typically with contemporaneous time records.'" *Douglas v Allied Universal Sec. Servs. LLC*, 371 F Supp 3d 78, 84-85 (E.D.N.Y. 2019) (quoting *Guareno v. Vincent Perito, Inc.*, No. 14-CV-1635, 2014 U.S. Dist. LEXIS 144038, at *2 (S.D.N.Y. 2014); *Arango v. Scotts Co., LLC*, No. 17-CV-7174, 2019 U.S. Dist. LEXIS 2660, at *5 (S.D.N.Y. 2019)).

Under the terms of the proposed Settlement, Class Counsel will receive no more than $279,347.43 in fees and $15,652.57 in costs, for a total of $295,000.00, as attorneys' fees, expenses and costs. Settlement at § 3.4. These amounts represent the actual costs incurred by Plaintiff in the litigation of this matter through July 5, 2022, and are significantly less than the fees incurred to date. *See* Exhibits 2-3. Here, Class Counsel spent approximately 897.45 hours litigating this action, which generated a loadstar of $650,928.00 (*see* Exhibit 3). This includes, but is not limited to, preparing and serving discovery on each of the Defendants, reviewing Defendants' responses to the same, responding to discovery propounded by Defendants, preparing Plaintiff for his two days of deposition and defending the same, preparing for and taking four depositions, preparing several letter motions and attending court hearing and conferences, preparing for and attending mediation, and drafting pleadings and other briefs, including a response to a partial motion to dismiss. The $279,347.43 in fees results in a negative multiplier of 2.33. The requested fee amount of significantly less than Class Counsel's lodestar is thus fair and reasonable.

Despite this District Court historically limiting the attorneys' fees award to 33.33% of the total settlement amount, Plaintiff submits that recent authority has deviated from this threshold. In *Fisher v. SD Prot. Inc.*, the Second Circuit found that "[w]hile in some cases the proportion of fees may be relevant in considering the reasonableness of an award (for example, the multi-million dollar securities class action involving a common fund, often cited by the district courts in evaluating fee requests, see *Goldberger*, 209 F.3d at 50-51), there is no explicit limit on attorneys' fees in FLSA actions and district courts should not, in effect and practice, implement such a limit. *Fisher v. SD Protection Inc.*, 948 F3d 593, 603 (2d Cir. 2020) (citing *City of Riverside v. Rivera*, 477 U.S. 561, 578 (1986) ["A rule of proportionality would make it difficult, if not impossible, for individuals with meritorious civil rights claims but relatively small potential damages to obtain redress from the courts."]). The Court there went on: "In most FLSA cases, it does not make sense to limit fees to 33% of the total settlement. FLSA cases often involve ordinary, everyday workers who are paid hourly wages and favorable outcomes frequently result in limited recoveries." *Fisher*, 948 F3d at 603-604; *see also Cheeks*, 796 F.3d at 207 (recognizing that FLSA cases tend to settle for less than $20,000 in total recovery and fees, and that employees often "settle for between $500 and $2,000" in unpaid compensation (internal quotation marks and citation omitted)).

### IV. Conclusion

For the reasons stated herein, the Parties respectfully request that the Court approve the Settlement as fair, adequate, and reasonable and authorize the Parties to effectuate the Settlement as set forth therein.

| | |
|---|---|
| Respectfully submitted, | Respectfully submitted, |
| Schneider Wallace Cottrell Konecky LLP | Morgan, Lewis & Bockius, LLP |
| <u>/s/Ori Edelstein</u> | <u>/s/ Christopher A. Parlo</u> |
| Ori Edelstein | Christopher A. Parlo |
| *Attorney for Plaintiff and the Class and Collective members* | *Attorneys for Defendants* |

cc: All Counsel of Record (via ECF)