October 21, 2022

**Via ECF**
The Honorable Philip M. Halpern
United States District Judge
U.S. District Court, Southern District of New York
500 Pearl Street, Room 1950
New York, NY 10007

Re: ***Ramirez v. Marriott International, Inc., et al*, Case No. 7:20-cv-02397-PMH; Settlement Agreement and Revised Joint Statement**

Dear Judge Halpern:

Following a mediation on May 23, 2022, the parties reached a settlement in principle to resolve all claims in this action. The Parties thereafter sought approval of their settlement as fair and reasonable in accordance with *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015). Such request was denied without prejudice, subject to several changes requested by the Court. *See* Dkt. No. 134. This revised letter is submitted jointly by Plaintiff and Defendants in accordance with Docket entry No. 125, again requesting that the parties prepare a joint statement explaining the basis for the proposed settlement. Plaintiff's Counsel has also supplemented its request for attorneys' fees as requested by the Court.

## I. Factual and Procedural Background

Plaintiff filed his Class and Collective Action Complaint against Defendants Marriott International, Inc. and The Ritz-Carlton Hotel Company, LLC ("Defendants") on March 18, 2020 (ECF 1) and then filed a First Amended Complaint on April 17, 2020 (ECF 8) and a Second Amended Complaint on July 9, 2020 (ECF 32). Defendants filed their Partial Motion to Dismiss the Second Amended Complaint on December 18, 2020 (ECF 43), which Plaintiff opposed (ECF 42). Defendants' motion was denied (ECF 90) and they filed their Answer on September 27, 2021 (ECF 93).

The operative complaint alleges that Defendants operate a chain of hotels, restaurants, and resorts, including The Ritz-Carlton, Westchester in White Plains, New York where Plaintiff was employed as an in-room dining server ("IRD server") and banquet worker from 2015 to 2019. Second Amended Complaint ("SAC") ¶¶ 33-34. Plaintiff alleges that Defendants routinely added a mandatory service charge and delivery fee to food and beverage bills for in-room dining services, which Plaintiff alleges customers reasonably believed to be a gratuity to the service staff, but Defendants failed to remit the entirely of that fee to the non-managerial IRD service staff as gratuity. *Id.* ¶¶ 35-37. Defendants deny all these allegations (ECF 93).

Plaintiff further alleges that putative Class and Collective members also performed work while off-the-clock, with Defendants' knowledge, and were denied compensation for this time spent performing tasks such as cleaning, stocking supplies, setting up their workstations, and performing various other tasks before clocking in and after clocking out for their shifts. *Id.* ¶ 38.


Plaintiff alleges this is due to certain clock-in and clock-out procedures. *Id*. Plaintiff alleges this results in a failure to pay wages, including at an overtime rate. *Id.* ¶ 39. Defendants deny all these allegations (ECF 93).

Plaintiff also alleges that Defendants failed to maintain true and accurate wage notices and wage statements under the New York Labor Law. *Id.* ¶¶ 41-42. Defendants deny all these allegations (ECF 93).

In sum, Plaintiff brought the following causes of action to challenge Defendants' alleged policies and practices of allegedly failing to: (1) pay Plaintiff, and putative Collective members overtime wages as required under the FLSA; (2) pay overtime compensation to Plaintiff and putative Class members for "off-the-clock" work as required by New York Labor Law; (3) compensate Plaintiff and putative Class members the additional wages required by the New York spread-of-wages law; (4) remit all service fee surcharges to Plaintiff and putative Class members; (5) remit the entirety of the IRD service fee surcharges to non-managerial service workers and thereby becoming unjustly enriched; (6) provide Plaintiff and putative Class members accurate, itemized wage statements as required by N.Y. Lab. Law § 195(3); and (7) provide accurate and proper written notice as required by N.Y. Lab. Law § 195(1). SAC ¶ 5. Defendants deny all these allegations and claims and maintain, *inter alia*, that at all relevant times they properly and fully paid Plaintiff and putative Class and Collective members and provided all required wage notices and statements (ECF 93).

The parties participated in a mediation on May 23, 2022, before Court-appointed mediator Daniel Engelstein, where the parties reached a settlement in principle to resolve all claims in this action.

## II. Settlement Terms

The parties agreed to settle this action for $445,000.00, an amount which shall satisfy all monetary obligations set forth in the Settlement, including to fully resolve and satisfy any and all amounts to be paid to all Participating Class Members, Court-approved Costs and Fees, any Service Awards, and the fees and costs of the Settlement Claims Administrator. *See* Settlement Agreement and Release ("Settlement" or "Agreement"), attached hereto as **Exhibit 1**[1]. The employer's portion of the employment taxes will be paid by Defendants separate and apart from the Gross Settlement Fund (subject to certain provisions in the Settlement Agreement that allow the use of certain unclaimed amounts to reimburse Defendants for the employer's share of the employment tax obligations). Settlement at § 3.1.

The terms and conditions reflected in the Settlement represent a reasonable compromise of the disputed issues presented in this action. The parties seek approval of the overall breakdown as follows. Of the $445,000.000 Gross Settlement Fund, Class Counsel requests $279,347.43 for fees and $15,652.57 for costs, for a total of $295,000.00. Settlement at § 3.4. Named Plaintiff Ramirez

[1] Attached as **Exhibit 2** hereto, the Parties also attach Addendum A to the Settlement, which revises provisions as to the Settlement Claims Administrator, as well as the Plaintiff Ramirez's and Opt-In Plaintiff Boateng's ability to discuss the settlement, as identified by the Court in its denial without prejudice of approval of the Settlement Agreement.



will be provided a Service Award of up to $10,000.00, and Opt-In Boateng will be provided a Service Award of up to $2,500.00. Settlement at § 3.5. The Settlement Claims Administrator will also be paid up to $7,000.00 (Seven Thousand Dollars and Zero Cents) for the services rendered and the resulting Net Settlement Amount of approximately $130,500.00 will be allocated to the Participating Class Members. Settlement at §§ 1.23, 3.6.

Plaintiff submits that these service awards to Named Plaintiff Ramirez and Opt-In Boateng are made in exchange for their services rendered to the Class and Collective members, and as consideration for their general release of all claims. Settlement at §§ 3.5, 4.1. The additional consideration provided to Named Plaintiff Ramirez and Opt-in Boateng are sufficient to support their general release of all claims against Defendants. In its Order dated September 8, 2022 (Dkt. No. 134), the Court, citing *Bondi v. DeFalco*, No. 17-CV-5681 (KMK), 2020 WL 2476006 (S.D.N.Y. May 13, 2020), took issue with the breadth of the release in Section 4.1 of the Settlement Agreement, specifically the following language, ". . . *as well as any other claim of any kind* under federal, state, or local law or common law . . ." (emphasis added). However, this release language cited by the Court applies only and specifically to Plaintiff Ramirez and Opt-in Boateng and not to the broader class. Indeed, the *Bondi* Court approved a similarly broad general release for the class representatives based on the additional consideration they were provided in the form of service awards. *Bondi*, 2020 WL 2476006 at *6 ("Here, the Class Representatives' general release of all claims against Defendants is expressly offered as 'consideration for the payment of the Service Award to the Class Representatives.' (Class Settlement ¶ 4.I.B.) Accordingly, because Plaintiffs have provided a 'sound explanation for how this broad release benefits the [Class Representatives],' *Gurung*, 226 F. Supp. 3d at 228, the Court deems this release reasonable despite its breadth.")). Similarly, here, as in *Bondi*, the Settlement Agreement specifically provides that "[i]t is expressly understood and agreed that the Service Awards being paid to the Plaintiff Ramirez and Opt-in Boateng are in part being paid as consideration for their general release of claims and that the Service Awards would be smaller in the absence of this general release." Section 4.1. The general release of all claims does not apply to Class Members. Thus, the parties respectfully submit that *Bondi* supports the release language in Section 4.1 of the Settlement Agreement. *Bondi*, 2020 WL 2476006 at *6 ("… In general, courts in the Second Circuit reject such broad, general releases… However, such releases are deemed acceptable where they 'serve as consideration for service awards for Class Representatives.'").

All Participating Class Members will receive a check for a pro-rata portion of the Net Settlement Amount. Because the Settlement resolves a hybrid FLSA and Rule 23 action, the Settlement provides for different releases depending on the actions of the Participating Class Members. Those Participating Class Members who cash their settlement checks by the check cashing deadline will release all claims that were brought or could have been brought under the FLSA, as well as New York State law based on or arising out of the factual predicates and/or allegations in the Complaint against Defendants and/or any of the Releasees in connection with work they performed in in-room dining or banquets at the Ritz Carlton Westchester ("RCW"), based on events that took place from March 18, 2014 through full execution of the Agreement. Settlement at § 1.35(A). All Participating Class Members who do not timely cash their settlement checks do not release their FLSA claims, releasing instead only the state wage and hour claims that were or could have been asserted in the action in connection with work performed in in-room dining or banquets at the RCW for Defendants that arise from a common nucleus of operative facts



and circumstances based on events that took place from March 18, 2014 through full execution of the Agreement. Settlement at § 1.35(B). Courts in this District have previously approved these types of releases. In *Solis v. OrthoNet LLC*, Plaintiffs sought an order granting preliminary approval of a Settlement Agreement related to both FLSA and Rule 23 class claims. *Solis v. OrthoNet LLC*, No. 19-CV-4678 (VSB), 2021 U.S. Dist. LEXIS 90687, *1 (S.D.N.Y. May 11, 2021). The release language in *Solis* provided that FLSA settlement class members who negotiate their checks shall affirm their intent to release the FLSA claims, known and unknown and acknowledge they have no right to assert any claims to recover money or other relief arising from the FLSA claims. *Id.* at *7-8. Further, NY class members who do not timely exclude themselves from the settlement shall release the state claims and by failing to timely exclude themselves, they affirm their intention to release the state claims, known and unknown and that they no longer have the right to assert any claim to recover money or other relief arising from the state law claims. *Id.* at *8-9. The Court found that "the releases are fair and reasonable because, as here, "the released claims are related to wage-and-hour or other employee-benefits issues." *Id.* at *10. The Court should find the same here.

The Settlement also includes a detailed process which the Settlement Claims Administrator will abide by in effectuating the Settlement. Settlement at § 2.2(C). Under that process, within 30 days of the execution of the Settlement, or as otherwise ordered, Defendants shall provide the Settlement Claims Administrator with the class list[2]. Settlement at § 2.5(A). After entry of the Approval Order, the Settlement Claims Administrator shall mail to each Class member the Court-approved notice informing them of the Settlement and his or her rights, including their ability to object to, opt-out of, or participate in the Settlement. Settlement at § 2.5(B). If a notice is returned as undeliverable, the Settlement Claims Administrator shall seek to obtain a current address by conducting a skip-trace, or other search, and shall re-mail the notice to such current address if found. Settlement at § 2.5(C).

Defendants shall deposit the Gross Settlement Fund plus the employer's share of the Employment Taxes as calculated by the Settlement Administrator into the Qualified Settlement Fund ("QSF") within the latter of (a) 15 days after the Opt-out Deadline or (b) 15 days from the date the Settlement Claims Administrator notifies Defendants that it has established the QSF and provides wiring instructions. Settlement at § 3.2. Within 10 days after the QSF has been fully funded, the Settlement Claims Administrator shall mail settlement checks to Participating Class members, mail any Service Awards to Plaintiff Ramirez and Opt-in Plaintiff Boateng, wire-transfer payment to Class Counsel in the amount of the Court-approved Fees and Costs, and pay all Employment Taxes to the appropriate government authorities due at such time. Settlement at § 3.7(A). Each Participating Class Member's award shall be based *pro rata* on the actual hours worked or wages earned by the Participating Class Member as an IRD Server at the RCW and no Participating Class Member shall receive less than $50.00. Settlement at § 3.6. Payments made to Participating Class Members will be deemed 50% W-2 wage income and 50% 1099 miscellaneous income. Settlement at § 3.3. Checks shall remain valid for 180 days, after which any unclaimed monies from uncashed checks in the QSF shall be allocated first to pay any late claims, second to reimburse Defendants for their payment of the employer's share of the Employment Taxes, and

---

[2] Within 15 days of approval of the Settlement, Defendants shall provide Class Counsel a Class List which will only contain unique numerical identifiers to identify the Class Members and the Class Members' first name and last initial and will not include last known addresses and phone number or social security numbers.


then all excess funds shall be provided as *cy pres* to Children's Miracle Network Hospitals. Settlement at § 3.7(B).

The parties believe that the Settlement reflects a reasonable compromise of the issues presented in this action.

## III. *Cheeks* Analysis

In reviewing a settlement for approval, the Court must find that the settlement of FLSA claims is "fair and reasonable." *Velasquez v. SAFI-G, Inc*., 137 F. Supp. 3d 582, 584 (S.D.N.Y. 2015); *see also Cheeks v. Freeport Pancake House Inc*., 796 F.3d 199 (2nd Cir. 2015). In determining whether an FLSA settlement is "fair and reasonable," courts consider "(1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion." *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 176 (S.D.N.Y 2015) (citing *Wolinsky v. Scholastic Inc*., 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012)).

### A. The Settlement Agreement is Fair and Reasonable

The proposed Settlement is both fair and reasonable. As described above, Defendants have agreed to pay a Gross Settlement Fund of $445,000 to settle this matter, of which the approximately 50 Class Members[3] will receive the Net Settlement Fund (i.e., the Gross Settlement Fund less Court-approved Attorneys' Costs and Fees, the Service Awards, and fees and costs of the Settlement Claims Administrator). *See* Exhibit 1.

*The Range of Possible Recovery*

Based on Defendants' records, Class Counsel estimated that the combined maximum amount recoverable based on the claims alleged if the Class Members prevailed on every aspect of their claims would be approximately $650,180.[4] When considering the Gross Settlement Amount and subtracting the fixed amounts for Attorneys' Costs and Fees ($295,000.00), Settlement Claims Administrator fees and costs (up to $7,000.00) and the Service Awards ($12,500,00), there would be approximately $130,500.00 in the Net Settlement Fund to be distributed to the Participating Class Members. This is approximately 20% of the anticipated recovery Class Counsel calculated. This is fair and reasonable as a percentage amount. *See Gervacio v. ARJ Laundry Servs. Inc*., No. 17-cv-9632 (AJN), 2019 U.S. Dist. LEXIS 12760, 2019 WL 330631, at *1 (S.D.N.Y. 2019) (approving FLSA settlement that would provide the plaintiff "approximately 20 percent of the maximum possible recovery amount"; see also *Beckert v.*

---

[3] Defendants represented that at the time of mediation, there were approximately 50 individuals as part of the Settlement Class. The RCW has not been in operation since September 2020, so the parties do not anticipate that the number of eligible employees has increased.

[4] This assumes 0.5 hours of off-the-clock unpaid overtime per week per Class Member based on the average overtime rate for the group, violation of the spread of hours law for 8% of shifts, failure to remit approximately 15% of the total service charges and delivery fees, and the maximum $5,000 per Class Member for each of the wage notice and wage statement claims.

*Ronirubinov*, No. 15 Civ. 1951 (PAE), 2015 U.S. Dist. LEXIS 167052, 2015 U.S. Dist. LEXIS 167052, at *2 (S.D.N.Y. Dec. 14, 2015) (approving a settlement of approximately 25% of the maximum possible recovery). When the total estimated recovery amount is divided by the approximately 50 employees at issue, this provides an average award of approximately $2,590.22 per individual.

This amount is fair and reasonable as a percentage amount, but also "in light of the legal and evidentiary challenges that would face the plaintiff[] in the absence of a settlement." See *Angamarca v Hud-Moe LLC*, No. 18-CV-1334(RA), 2018 US Dist LEXIS 212518 (S.D.N.Y. 2018) (quoting *Lopez v. Poko-St. Anns L.P.*, 176 F. Supp. 3d 340, 342 (S.D.N.Y. 2016)). Defendants here strongly contest liability, including, *inter alia*, that the Class Members performed work off-the-clock, that the timekeeping system prevented these individuals from recording any hours, and any violations with regard to the wage notice and wage statements, service charges and delivery fees. Defendants also strongly contest that collective or class treatment is appropriate in this case, except for settlement purposes. Defendants further dispute Plaintiff's damage calculations, and a risk exists that even if Plaintiff were successful, the amount he could ultimately recovery would be far less than that settled for, given that his calculations assume full recovery for all claims.

Taking into account these risks, and the percentage of the anticipated recovery based on the maximum possible amount recoverable, Plaintiff believes the Settlement is a fair compromise of all the claims.

*The Settlement Will Enable the Parties To Avoid Anticipated Burdens And Expenses and Litigation Risk*

The Settlement will prevent unnecessary expense by the Court, the parties, and their counsel, of both time and resources. Significantly, the parties will save time and expense of drafting and opposing dispositive motions, motions for collective and/or class certification (and, if necessary, decertification), and extensive pre-trial preparation, which would be the next steps in this litigation. This would have required hours of billing for all parties involved, especially because Defendants ardently contested the allegations in the operative complaint and the ability to proceed on a class or collective basis, as described above. By settling this matter at this juncture, the parties minimize the risks of litigation for all involved—the Class Members are assured speedy and merited payment of the Settlement awards and Defendants are assured quicker dismissal of the action.

The benefit of a quick and fair settlement, when weighed against the litigation risks and burdens associated with protracted litigation, weigh in favor of approval of this proposed Settlement.

*Arms-Length Bargaining and the Possibility of Fraud or Collusion*

The Parties reached a settlement after completing discovery whereby Defendants produced hundreds of pages of representative documents, including documents and materials relating to the timekeeping system and procedures at the RCW, RCW sample IRD menus, IRD bills, IRD receipts



and IRD service charge calculations during the relevant time period, Plaintiff deposed several Company employees and Defendants deposed Named Plaintiff Ramirez and Opt-In Boateng. Further, the parties negotiated all the terms and conditions of the Settlement at arms' length, including by way of Court-appointed mediation on May 23, 2022 and several meet and confer calls thereafter to iron out the terms of the Settlement. Both Class Counsel and Defendants' counsel are experienced litigators in the field of wage and hour class and collective actions. Plaintiff and Defendants are aware of the terms of the Settlement, and each signed the Settlement, signaling their approval of the Settlement and safeguarding against fraud or collusion.

**The Proposed Award of Attorneys' Fees Is Fair and Reasonable**

Plaintiff submits that the proposed attorneys' fees are also fair and reasonable.[5] "While a court can award attorney's fees based on either the lodestar calculation—the hourly rate times the number of hours worked—or a percentage of the settlement award, '[c]ounsel must provide a factual basis for a fee award, typically with contemporaneous time records.'" *Douglas v Allied Universal Sec. Servs. LLC*, 371 F Supp 3d 78, 84-85 (E.D.N.Y. 2019) (quoting *Guareno v. Vincent Perito, Inc*., No. 14-CV-1635, 2014 U.S. Dist. LEXIS 144038, at *2 (S.D.N.Y. 2014); *Arango v. Scotts Co., LLC*, No. 17-CV-7174, 2019 U.S. Dist. LEXIS 2660, at *5 (S.D.N.Y. 2019)).

Under the terms of the proposed Settlement, Class Counsel will receive no more than $279,347.43 in fees and $15,652.57 in costs, for a total of $295,000.00, as attorneys' fees, expenses and costs. Settlement at § 3.4. These amounts represent the actual costs incurred by Plaintiff in the litigation of this matter through July 5, 2022, and are significantly less than the fees incurred to date. *See* Exhibits 3-4. Here, as of August 26, 2022, Class Counsel spent approximately 897.45 hours litigating this action, which generated a loadstar of $650,928.00 (*see* Exhibit 4)[6]. This includes, but is not limited to, preparing and serving discovery on each of the Defendants, reviewing Defendants' responses to the same, responding to discovery propounded by Defendants, preparing Plaintiff for his two days of deposition and defending the same, preparing for and taking five depositions, preparing several letter motions and attending court hearing and conferences, preparing for and attending mediation, and drafting pleadings and other briefs, including a response to a partial motion to dismiss. The $279,347.43 in fees results in a negative multiplier of 2.33. The requested fee amount of significantly less than Class Counsel's lodestar is thus fair and reasonable.

Despite this District Court historically limiting the attorneys' fees award to 33.33% of the total settlement amount, Plaintiff submits that recent authority has deviated from this threshold. In *Fisher v. SD Prot. Inc*., the Second Circuit found that "[w]hile in some cases the proportion of fees may be relevant in considering the reasonableness of an award (for example, the multi-million

---

[5] Defendants take no position with respect to Plaintiff's application for attorneys' fees/costs.

[6] Since August 27, 2022, Class Counsel has spent additional time, approximately 24.3 hours, on this matter, generating an additional lodestar amount of $17,254.00. *See* Exhibit 5. This additional time includes, for example, reviewing the Court's denial of the Parties' request for approval of the Settlement, conferring with Defendant's counsel as to the selection of a new settlement administrator and how to remedy the issues posed by the Court's denial of the Settlement, obtaining new bids from potential settlement administrators, drafting the addendum and revised joint statement for settlement approval (and preparing the exhibit thereto), calendaring deadlines based on the Settlement, conferring internally about drafts to the joint report for settlement approval, conferring with Plaintiff Ramirez and Opt-In Boateng, and finalizing and filing documents.




dollar securities class action involving a common fund, often cited by the district courts in evaluating fee requests, see *Goldberger*, 209 F.3d at 50-51), there is no explicit limit on attorneys' fees in FLSA actions and district courts should not, in effect and practice, implement such a limit. *Fisher v. SD Protection Inc*., 948 F3d 593, 603 (2d Cir. 2020) (citing *City of Riverside v. Rivera*, 477 U.S. 561, 578 (1986) ["A rule of proportionality would make it difficult, if not impossible, for individuals with meritorious civil rights claims but relatively small potential damages to obtain redress from the courts."). The Court there went on: "In most FLSA cases, it does not make sense to limit fees to 33% of the total settlement. FLSA cases often involve ordinary, everyday workers who are paid hourly wages and favorable outcomes frequently result in limited recoveries." *Fisher*, 948 F3d at 603-604; *see also Cheeks*, 796 F.3d at 207 (recognizing that FLSA cases tend to settle for less than $20,000 in total recovery and fees, and that employees often "settle for between $500 and $2,000" in unpaid compensation (internal quotation marks and citation omitted)).

**Supplemental Information Per Court's September 8, 2022 Order**

The Court's September 8, 2022 order requested that Plaintiff's counsel's application for attorneys' fees be supplemented with: (i) additional authority in support its position that awarding approximately 66% of total class recovery generated by 41 separate timekeepers is appropriate in this FLSA case; and (ii) all factual information necessary to support its lodestar calculation-including, *inter alia*, detailed time entries for each timekeeper, summaries thereof by task, information about skill and experience of each timekeeper, and counsel's retainer agreement for the case.

Plaintiff submits that although "'the trend in this Circuit is toward the percentage method,' it remains the law in this Circuit that courts 'may award attorneys' fees in common fund cases under either the 'lodestar' method or the 'percentage of the fund' method.'" *McDaniel v. County of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc*., 396 F.3d 96, 121, 2005-1 Trade Cas. (CCH) ¶ 74661 (2d Cir. 2005)). Further, in *City of Riverside v. Rivera*, 477 U.S. 561 (1986), the Court affirmed a fee-shifting award of $245,456.25 for counsel who had recovered $33,350 in damages. Had a percentage cross-check been undertaken, it would have shown the lodestar to have been 88% of the defendant's total payout (the damages and fees combined). Yet the Court ruled that Congress enacted fee-shifting statutes to cover just these sorts of cases based on the importance of the underlying rights separate and apart from their monetary value. Given the fee-shifting nature of the FLSA and the New York wage and hour laws, and the relatively small nature of the potential recovery per worker, the lodestar method should be used by the Court in determining whether counsel's fee award is reasonable. See *Fisher*, 948 F3d at 603-604 (recognizing that "[i[n most FLSA cases, it does not make sense to limit fees to 33% of the total settlement. FLSA cases often involve ordinary, everyday workers who are paid hourly wages and favorable outcomes frequently result in limited recoveries.")

"While determining the reasonable fee in any specific scenario is a matter of discretion for the Court, '[t]he Supreme Court and Second Circuit have held that 'the lodestar—the product of a reasonable hourly rate and the reasonable hours required by the case—creates a presumptively reasonable fee.'" *Norlan Gonzalez v. Fresh Start Painting Corp*., No. 18-CV-11124 (PMH), 2022 U.S. Dist. LEXIS 154254, *8 (S.D.N.Y. Aug. 26, 2022). In *Sarit v. Westside Tomato, Inc*., the

Southern District found that "[a]lthough that fee amounts to half of the overall settlement amount, and although district courts in the Second Circuit more routinely approve fees to counsel totaling one third of the recovery amount…there is nothing necessarily problematic about a settlement in which the plaintiff's attorney receives more than a third of the settlement payment." *Sarit v. Westside Tomato, Inc*., No. 18-CV-11524 (RA), 2021 U.S. Dist. LEXIS 94903, *3 (S.D.N.Y. May 19, 2021) (citing *Fisher*, 948 F3d at 603). "The appropriateness of a fees award depends on whether the award is justified by counsel's contemporaneous time records documenting the hours expended and the nature of work performed, as well as information regarding counsel's experience and practice." *Id.* at *4.

Plaintiff Counsel's lodestar fees to date are more than double the requested fee award. Through the date that the Parties submitted their original joint statement requesting approval of the Settlement, August 26, 2022, Class Counsel expended 897.45 hours in the litigation of this action, resulting in a lodestar of $650,928.00. This request does not account for all the work Class Counsel is further expending to seek approval of this Settlement, as well as the work they will do to bring the Settlement to a close. Class Counsel anticipates follow-up work to complete the settlement process, which will increase the lodestar amount listed. Given the amount of Plaintiff's Counsel's lodestar, the contemporaneous time records documenting the hours expended attached as Exhibit B, as well as information regarding counsel's experience and practice outlined below, the requested fee award is reasonable. See *Sarit*, 2021 U.S. Dist. LEXIS 94903, *4.

**Plaintiff's Counsel's Hours Are Reasonable**

Plaintiff's Counsel spent a significant amount of time and resources over the last two and a half years to bring about this Settlement. This includes, but is not limited to, preparing and filing a complaint, first amended complaint, and second amended complaint; opposing Defendants' Partial Motion to Dismiss; appearing for conferences; preparing for summary judgment by responding to Defendants' 56.1 Statement and preparing Plaintiff's own statement; preparing and serving 107 Requests for Admission on Defendant Marriott and 106 on Defendant Ritz-Carlton, 61 Requests for Production to each Defendant, and 14 Interrogatories to each Defendant, as well as reviewing the responses and multiple sets of amended responses to the same; objecting and responding to 19 Interrogatories and 29 Requests for Production served by Defendants; reviewing and responding to correspondences from Defendants regarding perceived deficiencies in Plaintiff's discovery responses, and preparing at least two meet and confer letters regarding deficiencies in Defendants' responses; filling letters to request that the scope of discovery be expanded and requesting permission to file a motion to compel discovery, and providing the Court updates on the status of discovery issues; preparing Plaintiff for his two days of deposition and defending the same; preparing for and taking five other depositions; and preparing and/or revising documents related to settlement and approval.

A true and correct copy of Plaintiff's detailed billing records are attached as Exhibit B to the Declaration of Ori Edelstein in Support of Plaintiff's Unopposed Letter Motion to File Retainer Agreement Under Seal and Billing Detail Under Redaction. Plaintiff's counsel uses an electronic time-keeping system where attorneys and staff members record time contemporaneously as they complete case tasks. These records have been redacted to protect privileged information therein, but the unredacted versions can be provided for this Court's in camera review should the Court


wish to review them. The hourly rates for the partners, attorneys, and professional staff are the same or similar as would be charged in non-contingent matters and/or which have been accepted and approved in other recent class and collective action wage and hour litigation.

Carolyn Cottrell is the lead partner assigned to this matter. She received her California license to practice law in 1993. Ms. Cottrell billed approximately 7.2[7] hours to this case. This work consisted of, for example, reviewing and strategizing with associates as to the complaint, research, possible claims, discovery, and the case matter; appointments to notarize documents; reviewing correspondences; and strategizing with associates on arguments for future hearings, mediation, and settlement.

Ori Edelstein is a partner on this matter. He received his California license to practice law in 2009. Mr. Edelstein billed approximately 93.6 hours to this case. He worked on this case in all capacities, including but not limited to development of case strategy; reviewing and editing complaints, motions, and other filings; corresponding with Defendants' counsel; reviewing, revising, and strategizing as to discovery; discussing strategy and preparation of arguments for hearings; attending hearings; preparing for and taking depositions; conferring with opposing counsel on several issues, including mediation and settlement; preparing for and attending mediation; and reviewing and revising settlement documents.

William Hogg is a former associate on this matter. He received his Texas license to practice law in 2013 and his California license to practice law in 2021. Mr. Hogg billed approximately 233.3 hours to this matter before his departure from the firm. Mr. Hogg worked on the case in several capacities. For example, he assisted with the initial research, investigation, and evaluation of the action; corresponded with Plaintiff and aided in preparation of the complaints; developed case strategies together with other attorneys staffed on the matter; corresponded with other potential class members; reviewed and analyzed time records; corresponded with Defendants' counsel regarding pleadings, extensions, discovery, and early resolution; prepared and revised motions, oppositions to motions, letter-motions, and other filings; prepared for and attended hearings and Court conferences; prepared, reviewed, revised, and strategized as to discovery; and prepared for, defended, and took depositions.

Michael Burke was a former senior associate on this matter. He received his Texas license to practice law in 1999. Mr. Burke billed approximately 43.60 hours to this matter before his departure from the firm. Mr. Burke's work in this action included, but was not limited to, preparing and taking depositions, and strategizing with other associates staffed on this matter as to those depositions; reviewing and revising filings and correspondences; researching relevant authority related to certification and other filings; appearing for Court conferences; and corresponding with Plaintiff, Opt-In Boateng, and Defendants' counsel.

Scott Gordon is an associate that assisted on this matter. He received his California license to practice law in 2018. Mr. Gordon assisted in this matter for approximately 75.80 hours with relation to researching and drafting discovery letters, researching and responding to Defendants'

---

[7] The billed hours referenced in this section reference time billed as of the date of the initial filing of the joint statement requesting settlement, August 26, 2022.



pre-motion letters regarding their motion for summary judgment, assisting with the joint 56.1 statements, and corresponding with other associates staffed regarding the same topics.

Kristabel Sandoval is an associate staffed on this matter. She billed approximately 241.6 hours. She received her California license to practice law in 2018. Ms. Sandoval worked on this case in several capacities. For example, she conducted research and assisted with the initial evaluation of the case. She corresponded with Defendants' counsel and with Plaintiff and other current and/or former employees of Defendants. She appeared for Court conferences and mediation and strategized regarding several aspects of the case with other associates staffed on the matter. She drafted and revised written discovery, as well as meet and confer letters thereto, reviewed discovery propounded and served by Defendants, and assisted in the preparation for depositions, some of which she also attended. She assisted in the preparation of joint filing, as well as letter-motions, mediation materials, settlement documents, and other filings.

Philippe Gaudard is an associate that briefly assisted on this matter. He received his California license to practice law in 2020. Mr. Gaudard billed 10.3 hours which consisted of preparing a third amended complaint, which was not filed because the parties reached a settlement.

Daniel Bryant was a former associate that briefly assisted on this matter. He received his Texas license to practice law in 2019. Mr. Bryant billed approximately 27.3 hours on this case, including but not limited to researching motions, authority, and rules regarding modifying scheduling orders, drafting and revising a letter motion regarding modifying the scheduling order, reviewing discovery responses and preparing and revising a letter regarding discovery deficiencies, and corresponding with others staffed on several case-related topics.

Lonnie Christopher, Sarah King-Cash, Bradley Kopp, and Joseph McKay are individuals listed under the Law Clerks/Paralegals section of Exhibit 4. Together they billed approximately 77.85 hours. These tasks include, for example, researching, preparing, and corresponding with attorneys regarding motions for *pro hac vice* admission and amended motions; handling finalization, service, and filing of documents; preparing shells for discovery responses; calendaring case-related deadlines and reviewing correspondences related to calendaring deadlines; and assisting with the damages analysis related to settlement.

For purposes of this request for attorneys' fees, Plaintiff is willing to discount the time billed for all Of Counsel/Associates, Law Clerks/Paralegals, and Clerical Staff who billed less than 10 hours in this matter. This includes 86.3 total hours ($45,150.00) billed by David Leimbach, Ryan Bonner, Ved Chitale, Taylor Jones, Moises Jrade, Michelle Lim, James Maher, John Nestico, Onyebuchi Okeke, Jordyn Rystrom, Talal Al-Hindi, Elvira Barajas, Thomas Barnett, Silvia Carter, Lourdes Castro, Linda Currid, Rocio Espinoza, Michael Garcia, Ashley Hermann, Collin Hoover, Eugene Huffman, Tracey McClain, Sarah Price, Ruby Rawlinson, Brianda Rodriguez, Tyler Smith, Kelle Winter, Vincent Yasay, and Tony Brandy. If the Court choses to exclude these hours, the lodestar amount, $605,778.00, remains significantly more than the requested attorneys' fees. Again, the lodestar amount does not include all the time billed since the August 26, 2022 filing of the joint statement seeking approval, which necessarily increases the total amount.



**Plaintiff's Counsel's Billing Rates are Reasonable**

As to the billing rates charged, Class Counsel billed at a rate of $1,105 for partners, between $680 and $935 for Of Counsel/Associates whose time was not discounted above, and between $275 and $450 for Law Clerks/Paralegals whose time was not discounted above. Courts in this District have found rates similar to these appropriate. See *Raniere v. Citigroup Inc.*, 310 F.R.D. 211, 220-21 (S.D.N.Y. 2015) (approving hourly rates of $650-900 per hour for partners and $350-600 per hour for associates on lodestar crosscheck). In addition, Federal Courts throughout California and the country have found Class Counsel's hourly rates to be reasonable for purposes of a lodestar crosscheck. For example, in *Ramirez, et al. v. Rite Aid Corporation, et al*., Case No. 2:20-cv-03531-GW-SK, ECF 72 (C.D. Cal. May 19, 2022, the Court awarded a $2,700,000 fee award, plus costs, and held that "the fee award is further supported by a lodestar crosscheck, whereby it finds that the hourly rates of Schneider Wallace Cottrell Konecky LLP…are reasonable." *Id.* The rates requested in that action were $1,005 for partners, between $680 and $850 for of counsel and associates, between $275 and $475 for law clerks and paralegals, and $250 for clerical staff. These rates are only slightly lower than those requested here. The Northern District of California also found Class Counsel's similar hourly rates reasonable for purposes of a lodestar crosscheck in *Villafan v. Broadspectrum Downstream Services, Inc*., et al., Case No. 3:18-cv-06741-LB (N.D. Cal April 9, 2021). Judge Beeler noted that "[a]s to the lodestar cross-check, the billing rates are normal and customary (and thus reasonable) for lawyers of comparable experience doing similar work." *Id.* In that case, Class counsel charged between $250 and $1,005 for their timekeepers from paralegals to partners. The prior hourly rates were also recently found to be reasonable in *Amaraut v. Sprint/United Mgmt*., wherein the Court found that "the fee award is further supported by a lodestar crosscheck, whereby it finds that the hourly rates of Schneider Wallace Cottrell Konecky LLP . . . are reasonable, and that the estimated hours expended are reasonable." *Amaraut v. Sprint/United Mgmt. Co*., No 19-cv-411-WQH-AHG, 2021 U.S. Dist. LEXIS 147176, *29 (S.D. Cal. Aug. 5, 2021). Judge Hayes found that the "[t]wenty-five attorneys and paralegals from SWCK spent 1,707.90 hours on [the] case, with billing rates ranging from $300 to $450 for the paralegals and $680 to $1,005 for the attorneys" had "significant experience in class action and wage and hour litigation and has demonstrated significant skill during this contentious litigation." Class Counsel's fees recently increased slightly as reflected herein.

Attorneys, like Class Counsel, who litigate on a wholly or partially contingent basis expect to receive significantly higher effective hourly rates in cases where compensation is contingent on success, particularly in hard-fought cases where, like in the case at bar, the result is uncertain.

Moreover, given that the fees requested are less than half of Plaintiff's Counsel's lodestar the effective average hourly rate based on the requested fee award is eminently reasonable. When dividing the total fees requested by the total hours billed ($279,347.43/897.45), the resulting blended average billing rate of approximately $311.26 for all hours billed. When taking into account the total discounted hours ($279,347.43/811.5), the blended average rate is $344.23 for all hours billed. These rates are less than 10 of the 12 timekeepers whose time is being considered after disregarding those individuals who billed less than 10 hours in this action. As such, the requested fees are reasonable and should be approved.



Further, the Court requested Class Counsel's retainer with Plaintiff, which is filed contemporaneously as Exhibit A to the Declaration of Ori Edelstein in Support of Plaintiff's Unopposed Letter Motion to File Retainer Agreement Under Seal and Billing Detail Under Redaction.

**IV. Conclusion**

For the reasons stated herein, the Parties respectfully request that the Court approve the Settlement as fair, adequate, and reasonable and authorize the Parties to effectuate the Settlement as set forth therein.

Respectfully submitted,

Schneider Wallace
Cottrell Konecky LLP

*/s/ Ori Edelstein*
Ori Edelstein

*Attorney for Plaintiff and the Class and Collective members*

Respectfully submitted,

Morgan, Lewis & Bockius, LLP

*/s/ Christopher A. Parlo*
Christopher A. Parlo

*Attorneys for Defendants*

cc: All Counsel of Record (via ECF)