EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HUMBERTO RAMIREZ, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> MARRIOTT INTERNATIONAL, INC. and THE RITZ-CARLTON HOTEL COMPANY, LLC, <br><br> Defendants. | Civil Action No. 7:20-cv-02397-PMH |

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (the "Agreement") is entered into by and between, on the one hand, Plaintiff Humberto Ramirez ("Plaintiff Ramirez"), individually, and on behalf of the Settlement Class (collectively "Settlement Class"), as well as Opt-in Plaintiff Michael Boateng ("Opt-in Boateng"), and, on the other, Marriott International, Inc. ("Marriott") and The Ritz-Carlton Hotel Company, LLC ("Ritz-Carlton") (Marriott and Ritz-Carlton, collectively, "Defendants").  Plaintiff, Opt-in Boateng, and Defendants are collectively referred to herein as the "Parties."

### RECITALS AND BACKGROUND

**WHEREAS,** Plaintiff Ramirez filed a Collective and Class Action Complaint on March 18, 2020, which was amended on April 17, 2020 and again on July 9, 2020 ("Complaint"), and which is now pending in the United States District Court, Southern District of New York, designated as Civil Action No. 7:20-cv-02397-PMH (the "Action"); and

**WHEREAS,** on May 25, 2021, Opt-in Boateng filed a "Consent to Join Collective Action" form joining the Action (Dkt. Nos. 66 and 66-1); and

**WHEREAS,** Defendants have defended and, absent this Settlement, would continue to vigorously contest all claims alleged in the Action, and deny all material allegations of the Action, as to which Defendants allege numerous meritorious defenses; and

**WHEREAS,** Defendants, without admitting any wrongdoing or liability on their behalf, or that Opt-in  Boateng could properly opt-in to join the Action or that class or collective treatment is appropriate in this Action other than for settlement purposes, nevertheless have agreed to enter into this Agreement to avoid further expense, inconvenience, and the distraction of burdensome and protracted litigation and to be completely free of any further controversy with respect to the

1

claims that were asserted or could have been asserted in, or relate in any way whatsoever to, the Action; and

**WHEREAS,** Class Counsel has carefully analyzed and evaluated the merits of the claims made against Defendants and the impact of this Agreement on Plaintiff Ramirez and the Settlement Class. Based upon their analysis and evaluation of a number of factors, Plaintiff Ramirez and Class Counsel recognize the substantial risks of continued litigation, including the possibility that the Action, if not settled now, might not result in any recovery whatsoever, or might result in a recovery that is less favorable and that would not occur for several years. Plaintiff Ramirez, Opt-in Boateng and Class Counsel are satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate and that this Agreement is in the best interest of Plaintiff Ramirez, Opt-in Boateng and the Settlement Class; and

**WHEREAS,** Plaintiff Ramirez, Opt-in Boateng and Defendants, by and through their respective counsel, have engaged in significant settlement discussions, including a mediation on May 23, 2022 with a Court-appointed mediator (*see* Dkt. Nos. 121 and 124), in connection with the resolution of the underlying claims alleged in the Action. Plaintiff Ramirez, Opt-in Boateng and Defendants – subject to the approval of the Court – have elected to settle the Action pursuant to the terms set forth in this Agreement, which shall be submitted to the Court for approval through the mechanisms set forth below; and

**WHEREAS,** strictly and solely for the purpose of settling the Action pursuant to this Agreement, Defendants agree to collective certification under 29 U.S.C. § 216(b) for all claims arising under the FLSA and class certification pursuant to Fed. R. Civ. P. 23 for all other claims, and that the Class shall include all Class Members; and

**WHEREAS,** the Parties agree that, if this Agreement is not approved pursuant to Section 2.4 below, or if it is terminated pursuant to Section 2.9 below, the Action will proceed as if this Agreement had never existed and had not been executed, this Agreement shall not be admissible in the Action or any other litigation, proceeding or forum, and the Parties shall have no rights or obligations pursuant to this Agreement.

**NOW THEREFORE**, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the receipt and sufficiency of which are hereby acknowledged, the Parties, represented by counsel and intending to be legally bound, agree to a full and complete settlement of the Action as set forth below.

The foregoing "Whereas" clauses are true and correct and incorporated by reference as part of this Agreement.

## 1. DEFINITIONS

The defined terms set forth in this Agreement have the meanings ascribed to them below and as otherwise defined in this Agreement.

1.1     **Action** means the above-captioned lawsuit.

1.2     **Agreement** means this Settlement Agreement and Release.

**1.3     Approval Motion** shall mean and refer to any filing seeking approval of the Settlement from the Court, including a letter and/or motion for approval and the supporting briefs, documents and materials, to be filed with the Court pursuant to Section 2.4 *infra*.

**1.4     Approval Order** means the jointly-drafted Order, as entered by the Court: (i) certifying the Settlement Class for settlement purposes only; (ii) approving the terms and conditions of this Agreement; (iii) appointing Schneider Wallace Cottrell Konecky, LLP as Class Counsel; (iv) directing the manner and timing of providing Notice to the Settlement Class; and (v) setting the dates and deadlines for effectuating the Settlement, including date of the mailing of Notice, the Opt-out Deadline, the Check Cashing Deadline and the date of any hearing if one is to be scheduled; among other things.

**1.5     Check Cashing Deadline** means the deadline for: (a) Participating Class Members (including Plaintiff Ramirez and Opt-in Boateng) to cash a Settlement Check which is the date one hundred and eighty (180) days after the Settlement Checks are mailed to Participating Class Members.

**1.6     Class Counsel** means the law firm of Schneider Wallace Cottrell Konecky, LLP.

**1.7     Class List** means a list in electronic format, preferably Excel, that Defendants will provide and which includes for each respective Class Member (to the extent known to Defendants) their (1) name, (2) last known address, and phone number, (3) social security number, (4) dates of employment at the Ritz-Carlton Westchester ("RCW") within the applicable limitations period(s), and (5) number of hours worked or wages earned in connection with work performed as an IRD Server within the applicable limitations period(s) per Section 3.6(A) below.  The version provided to Class Counsel will be identical to the one provided to the Settlement Claims Administrator, except the version provided to Class Counsel will only contain unique numerical identifiers to identify the Class Members and the Class Members' first name and last initial and will not include last known addresses and phone number or social security numbers.  This Class List shall only be used by the Settlement Claims Administrator and Class Counsel to effectuate the terms of this Settlement Agreement and for no other purpose. Nothing in this Agreement shall impact Class Counsel's ability to speak to Class Members who reach out to Class Counsel to answer their questions about the Settlement or this Action.

**1.8     Class Member** means an individual member of the Settlement Class and **Class Members** means all of those individual members together.

**1.9     Costs and Fees** means, collectively, Class Counsel's attorney's fees, costs, and expenses, in an amount not to exceed $279,347.43 in fees and $15,652.57 in costs, for a total of Two Hundred Ninety-Five Thousand Dollars and Zero Cents ($295,000.00).

**1.10    Court** shall mean and refer to the United States District Court for the Southern District of New York.

**1.11    Days** shall mean business days if the specified number is fewer than five (5), and calendar days if the specified numbers is five (5) or greater.

**1.12    Defendants** means Marriott International, Inc. and The Ritz-Carlton Hotel Company, LLC.

**1.13    Defendants' Counsel** means Christopher A. Parlo, Esq. Morgan, Lewis & Bockius LLP.

**1.14    Employment Taxes** means (1) all taxes an employer is required to pay arising out of or based upon the payment of employment and settlement compensation/consideration, including FICA, FUTA, and SUTA obligations, and (2) all ordinary and regular taxes required to be withheld from an employee's compensation or other income under this settlement.

**1.15    FLSA** means the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*

**1.16    Fairness Hearing** means any hearing scheduled at the Court's discretion in connection with the application for settlement approval and/or Approval Motion and Approval Order.

**1.17    Final Effective Date and Effective Date** mean the first business day after the Court signs the Order granting approval of the Settlement.

**1.18    Full Execution** means the date on which this Agreement has been signed by all Parties and not revoked.

**1.19    Gross Settlement Fund** means Four-Hundred Forty-Five Thousand Dollars and Zero Cents ($445,000.00), a non-reversionary amount to be used for allocation and calculation purposes that represents the maximum amount that Defendants agree and are obligated to pay pursuant to this Agreement.   Other than the Gross Settlement Fund and the employer's share of any Employment Taxes not covered pursuant to Section 3.3, Defendants shall have no obligation to pay any other amount under this Agreement.

**1.20    Individual Gross Amount** means the amount allocated to each Participating Class Member pursuant to Section 3.6, prior to any deduction for the Employment Taxes that are required to be withheld pursuant to Section 3.3.

**1.21    Individual Net Amount** means each Participating Class Member's Individual Gross Amount after deduction for the Employment Taxes that are required to be withheld pursuant to Section 3.3.

**1.22    Plaintiff Ramirez** means Humberto Ramirez, as well as any and all of his individual representatives, heirs, administrators, executors, beneficiaries, agents, and assigns, as applicable and without limitation.

**1.23    Net Settlement Fund** means the Gross Settlement Fund less Court-approved Costs and Fees, the Service Awards, and fees and costs of the Settlement Claims Administrator.

**1.24    Notice(s)** means the Court-approved Notice of Settlement of Class Action Lawsuit, in the proposed form attached at Exhibit A, subject to approval and authorization in the Approval Order.

**1.25    Objection** and **Objections** mean a written statement by a Class Member containing objections to the Settlement or this Agreement and submitted for consideration by the Court.

1.26    **Objection Deadline** means, unless otherwise set by the Court, the date that is sixty (60) days from the date of the initial mailing of the Notice to Class Members, and will be the last day for Class Members to mail Objections.

1.27    **Objector** means a Participating Class Member who timely and properly files an objection to the Settlement or this Agreement.

1.28    **Opt-in Boateng** means Michael Boateng, as well as any and all of his individual representatives, heirs, administrators, executors, beneficiaries, agents, and assigns, as applicable and without limitation.

1.29    **Opt-out Deadline** means, unless otherwise set by the Court, the date that is sixty (60) days from the date of the initial mailing of the Notice to Class Members, and will be the last day for Class Members to mail Opt-out Statements to be excluded from the Settlement.

1.30    **Opt-out Statement** means the written, signed statement that an individual Class Member submits indicating he or she has elected to exclude him or herself from the Settlement.  Any Class Member who timely submits an Opt-out Statement cannot be a Participating Class Member.

1.31    **Participating Class Member** means Class Members who do not timely submit an Opt-out Statement by the Opt-out Deadline. Named Plaintiff and Opt-in Boateng are deemed Participating Class Members upon execution of this Agreement and may not opt-out.

1.32    **Party** in the singular means the Plaintiff Ramirez, Opt-in Boateng or Defendants and, in the plural, means Plaintiff Ramirez, Opt-in Boateng and Defendants.

1.33    **Qualified Settlement Fund ("QSF")** means the FDIC insured interest-bearing account established under Section 468B of the Internal Revenue Code and Treas. Reg. § 1.468B-1, 26 C.F.R. § 1.468B-1, et seq. and controlled by the Settlement Claims Administrator for the purposes of retaining and distributing the Gross Settlement Fund and Net Settlement Fund in accordance with this Agreement. The QSF will be controlled by the Settlement Claims Administrator subject to the terms of this Agreement and the Approval Order. Interest, if any, earned in the QSF prior to the distribution of checks to Participating Class Members will become part of the Net Settlement Fund.  Interest, if any, earned in the QSF after the distribution of checks to Participating Class Members will be distributed in accordance with Section 3.7.

1.34    **Release** means the releases of claims, as specified herein, to which the Parties bind themselves as of the Effective Date of this Settlement Agreement.

1.35    **Released Class Claims** means:

(A)    for all Participating Class Members who cash their Settlement Checks by the Cash Checking Deadline: any and all claims that were brought or could have been brought under the FLSA or New York State law (including without limitation the New York Labor Law, the Hospitality Wage Order, and/or common law) based on or arising out of the factual predicates and/or allegations in the Complaint against Defendants and/or any of the Releasees (as defined in Section 4.1) in connection with work they performed in in-room dining or banquets at the RCW based on or

arising under the FLSA or New York State law, including without limitation the New York Labor Law, the Hospitality Wage Order, and/or common law, whether known or unknown, for wages (including but not limited to minimum wages and overtime), gratuities, deductions, service charges, administrative charges, tips, interest on such claims, penalties, damages, liquidated damages, attorney's fees, expenses, disbursements, litigation costs and fees, restitution, or equitable relief, and all other claims that were or could have been asserted in the Action that arise from a common nucleus of operative facts and circumstances under federal, state and local wage and hour laws, rules and regulations to the extent permitted by law, based on events that took place from March 18, 2014 through Full Execution of this Agreement; and

(B)     for all Participating Class Members who do not opt out and who do not timely cash their Settlement Check by the Check Cashing Deadline: any and all non-FLSA wage and hour claims that were or could have been asserted in the Action in connection with work performed in in-room dining or banquets at the RCW for Defendants that arise from a common nucleus of operative facts and circumstances based on events that took place from March 18, 2014 through Full Execution of this Agreement.

**1.36    Service Award** means an amount not to exceed Twelve Thousand Five Hundred Dollars and Zero Cents ($12,500.00) collectively, requested by the Plaintiff Ramirez ($10,000.00) and by Opt-in Boateng ($2,500.00), subject to the Court's approval, as a reasonable award for their efforts in bringing and prosecuting the Action.

**1.37    Settlement** means the proposed settlement reflected in this Agreement, entered into by the Parties to resolve the Action on behalf of the Plaintiff Ramirez, Opt-in Boateng, Class Members, and Defendants as set forth in this Agreement.

**1.38    Settlement Claims Administrator** means a third-party administrator mutually selected by the Parties.  The Parties have identified Rust Consulting as the Settlement Claims Administrator.

**1.39    Settlement Class** means all individuals who are or who have been employed by Defendants as hourly non-exempt in-room dining ("IRD") workers (including, but not limited to, Server-PM-In Room Dining ("IRD Servers"), Attendant-Bellstand-PM ("Bellmen"), and Agent-Communications ("PBX" or "Order-takers") (collectively, "IRD Servers")) at the RCW within the Settlement Period and who are included on the Class List. The Settlement Class does not include maintenance workers, corporate officers, salespersons, cooks, food preparers, chefs, dishwashers, directors, clerical staff, office workers, or any other person whose trade, classification, or profession does not customarily receive gratuities, unless an individual primarily holding those roles also performed work as an IRD Server at the RCW at any point during the Settlement Period. Defendants represented that at the time of mediation, there were approximately 50 individuals as part of the Settlement Class.

**1.40    Settlement Checks** means checks issued to Participating Class Members for their respective Individual Net Amount.  The Settlement Checks (or related paystub) will include a legend summarizing the Release set forth in Section 4 as follows: " I fully release Defendants and

the Releasees, as defined in the Agreement, from all claims that were or could have been brought in the Action under federal, state and local wage and hour laws, rules and regulations in connection with in-room dining and/or banquet service work I performed at the Ritz Carlton Westchester based on or arising under the FLSA or New York State law, including without limitation the New York Labor Law, the Hospitality Wage Order, and/or common law for wages (including but not limited to minimum wages and overtime), gratuities, deductions, service charges, administrative charges, tips, interest, penalties, damages, liquidated damages, attorney's fees and costs, expenses, disbursements, or equitable relief, to the fullest extent permitted by law, based on events that took place between March 18, 2014 and **[DATE of Full Execution of the Agreement]**."

**1.41    Settlement Period** means any time between March 18, 2014 through Full Execution of this Agreement.

## 2.   APPROVAL AND PROCEDURE

**2.1    Settlement Class.** Strictly and solely for purposes of settling the Action pursuant to this Agreement, and without admitting any wrongdoing or liability or that this Action is suitable for class or collective treatment other than for settlement purposes, Defendants agree to collective certification under 29 U.S.C. § 216(b) for all claims arising under the FLSA and class certification pursuant to Fed. R. Civ. P. 23 for all other claims and that the Class shall include all Class Members

**2.2    Settlement Claims Administrator.**

(A)    **Retention.** Within ten (10) days after the Final Execution of this Agreement, Class Counsel shall engage the Settlement Claims Administrator.

(B)    **Fees.** All actual and reasonable fees of the Settlement Claims Administrator shall be paid out of the QSF.

(C)    **Responsibilities.** The Settlement Claims Administrator shall be responsible for: (i) printing and disseminating to the Settlement Class the Notice, by hard copy via U.S. First Class Mail; (ii) as to any Notice returned without a forwarding address, performing a skip-trace or other search using the name, address, and/or social security number of the Class Member involved and then resending the Notice, and as to any Notice returned with a forwarding address, resending, both within three (3) days of receipt; (iii) responding to inquiries from the Parties; (iv) establishing, maintaining and monitoring a telephone number (including staffing it) until the Check Cashing Deadline or the termination of this Agreement, whichever comes first, that Class Members can call with questions; (v) keeping track of requests for exclusion (*i.e.,* to opt-out) or objection, including maintaining the original envelope in which the request or objection was mailed; (vi) promptly (within 3 days) furnishing to counsel for the Parties copies of any Opt-out Statements or other requests for exclusion, Objections, or other written or electronic communications from each Class Member that the Settlement Claims Administrator receives; (vii) mailing the Service Award and Settlement Checks in accordance with this Agreement and the Approval Order; (viii) preparing, sending and/or wire-transferring Class Counsel's attorney's fees, expenses, and costs; (ix) paying all

Employment Taxes as per Section 3.3 , including issuing the W-2 and 1099 Forms for all amounts paid from the QSF; (x) referring to Class Counsel all inquiries by Participating Class Members regarding matters not within the Settlement Claim Administrator's duties specified herein; (xi) responding to inquiries of counsel for the Parties relating to the Settlement Claims Administrator's duties specified herein; (xii) promptly apprising counsel for the Parties of the activities of the Settlement Claims Administrator; (xiii) maintaining adequate records of its activities, including the dates of the mailing of Notices, returned mail, and any and all other actual or attempted written or electronic communications with any Settlement Class Member; (xiv) confirming in writing to counsel for the Parties its completion of the administration of the Settlement; (xv) timely responding to communications from the Parties and their counsel; (xvi) providing all information, documents, and calculations necessary to confirm any financial terms and calculations required by this Agreement; and (xvii) such other tasks as the Parties mutually agree in writing.

(D)     **Access to the Settlement Claims Administrator.** The Parties will have equal access to the Settlement Claims Administrator. Class Counsel and Defendants' Counsel agree to use their best efforts to cooperate with the Settlement Claims Administrator and provide reasonable assistance in administering the Settlement.

**2.3     Class Counsel's Due Diligence.**

(A)     **Production of RCW Service Charge Files and Timekeeping System.** Defendants produced hundreds of pages of representative documents to Class Counsel from the Relevant Period. These documents included the key documents in the case, including documents and materials relating to the timekeeping system and procedures at the RCW, RCW sample IRD menus, IRD bills, IRD receipts and IRD service charge calculations during the relevant time period. It was and is Defendants' position that these documents properly and clearly disclosed to patrons how the IRD and/or banquet service charges and delivery fees were distributed among the staff and the hotel as required by New York law. It was and is Defendants' position that these documents properly disclosed the fact that there was nothing illegal about the RCW timekeeping system and procedures during the relevant time period.  During their negotiations, the Parties discussed the validity of the service charges and delivery fee disclaimer language and the RCW timekeeping system and procedures, and ultimately concluded that, based on the language used, the Settlement is fair, adequate, and reasonable and is in the best interest of the Class Members and Defendants.

(B)     **Production of Pay, Time, and Wage Theft Notice Records.**  Defendants also produced hundreds of pages of records pertaining to the Plaintiff Ramirez, Opt-in Boateng and their claims (including, for Opt-in Boateng, documents relating to his work at the RCW and the New York Edition Hotel). It was and is Defendants' position that these documents demonstrated compliance with all relevant New York Labor Laws, including but not limited to the minimum wage, overtime, and Wage Theft Notice laws. During their negotiations, the Parties discussed the validity of

such a position, and ultimately concluded that, based on the documentation provided, the Settlement is fair, adequate and reasonable and is in the best interest of the Class Members and Defendants.

**2.4    Settlement Approval.**

(A)    Within thirty (30) days of Full Execution of this Agreement, Class Counsel shall seek approval of the Settlement. If necessary, Class Counsel shall file an Approval Motion. In connection with seeking approval, Class Counsel shall submit to the Court: (1) the proposed Notice, (2) the proposed Approval Order, (3) an executed version of this Agreement, and (4) the necessary documents, memorandum, affidavits, and exhibits for the purposes of certifying, for settlement purposes only, a collective under 29 U.S.C. § 216(b) for all claims arising under the FLSA and a class pursuant to Fed. R. Civ. P. 23 for all other claims, and approving the Settlement. In connection with the approval process, Class Counsel will seek the setting of a date for Opt-out Statements and/or Objections to this Agreement, as contemplated and set forth in this Agreement.

(B)    In seeking approval of the Settlement, Class Counsel shall inform the Court of the intended process to effectuate the Settlement as contemplated and set forth herein, such that the Court may, among other things: (1) approve the Settlement as fair, adequate, and reasonable; (2) incorporate and approve the terms of the Release, as described herein; (3) dismiss the Action with prejudice; (4) award Costs and Fees to Class Counsel, (5) award costs and fees associated with administration of the Settlement to the Settlement Claims Administrator, (6) award any Service Awards; and (7) authorize distribution and payment to the Participating Class Members.

(C)    Class Counsel shall provide Defendants a copy in advance of any submission to the Court seeking approval of the Settlement. Defendants agree to promptly provide any proposed revisions to any such submission to Class Counsel. Defendants further agree that they shall not oppose the approval of the Settlement so long as it is consistent with the terms and conditions of this Agreement.

**2.5    Notice to Class Members.**

(A)    **Class List.** Within thirty (30) days of execution of this Agreement, or as otherwise ordered by the Court, Defendants' Counsel shall provide the Settlement Claims Administrator with the Class List. In order to provide the best notice practicable, prior to mailing the Settlement Notice, the Settlement Administrator will take reasonable efforts to identify current addresses as set forth in Section 2.5(C). Within fifteen (15) days of the entry of the Approval Order Defendants' Counsel shall provide Class Counsel with their form of the Class List, as described in Section 1.7.

(B)    **Notice.** Within fifteen (15) days of the entry of the Approval Order, or as otherwise ordered by the Court, the Settlement Claims Administrator shall mail to each Class Member via U.S. First Class Mail the Court-approved Notice. The Notice will inform the Settlement Class about this settlement and will also advise each Class

Member of his or her rights, including their ability to object to, opt-out of, or participate in the Settlement.

(C) **Search and Remailing.** If a Notice is returned as undeliverable, the Settlement Claims Administrator shall seek to obtain a current address by conducting one skip-trace, or other search, and shall re-mail the Notice to such current address if found. To the extent that Class Counsel is in possession of more current addresses for any Class Member, it shall provide them to the Settlement Claims Administrator for mailing purposes. The Settlement Claims Administrator shall also mail an additional Notice to any Class Member who requests them after the initial mailing of Notice and before the Notice Response Deadline. The Settlement Claims Administrator will notify Class Counsel and Defendants' Counsel of any Notices returned as undeliverable after the first mailing, including those returned as undeliverable after any subsequent mailing.  All costs of locating Class Members and remailing will be paid from the QSF.

**2.6    Opt-outs: Class Members who Opt-out of the Settlement.**

(A) Class Members who elect to opt-out of the settlement as set forth in this Agreement must mail, via U.S. First Class Mail, postage prepaid, a written, signed statement to the Settlement Claims Administrator that states he or she is opting out of the Settlement.

(B) To be valid, the Opt-out Statement must include the name, address, and telephone number of the Class Member, and a statement clearly indicating his or her intention to opt-out.  To be effective, an Opt-out Statement must be postmarked by the United States Postal Service on or before the Opt-out Deadline.

(C) The Settlement Claims Administrator shall stamp the received date on the original of each Opt-out Statement and send copies of each Opt-out Statement to Class Counsel and Defendants' Counsel not later than three (3) days after receipt.  Class Counsel shall also file with the Clerk of the Court stamped copies of any Opt-out Statements not later than five (5) days after receipt. The Settlement Claims Administrator shall, within three (3) days of the end of the Opt-out Period, send a final list of all Opt-out Statements to Class Counsel and Defendants' Counsel by both email and overnight delivery. The Settlement Claims Administrator shall retain the stamped originals of all Opt-out Statements and originals of all envelopes accompanying Opt-out Statements in its files until such time as the Settlement Claims Administrator is relieved of its duties and responsibilities under this Agreement.

(D) Any Participating Class Member who does not timely submit an Opt-out Statement pursuant to this Agreement, and does not cash a Settlement Check, will be deemed to have fully accepted the Settlement and the terms of this Agreement, will be bound by the Agreement and the Approval Order, and will have any non- FLSA Released Class Claims released and dismissed with prejudice.

**2.7    Process for Objectors: Participating Class Members who Object to the Settlement.**

(A)    Class Members who wish to present an Objection to the Settlement must do so in writing.

(B)    To be deemed a valid objection, the Objection must be mailed to the Settlement Claims Administrator via U.S. First Class Mail, postage pre-paid, and postmarked by the United States Postal Service on or before the Notice Response Deadline. The Objection must include all reasons for the Class Member's objection and any supporting documentation. The Objection must also include the name, address and telephone number of the Objector. The Settlement Claims Administrator will stamp the date received on the original and send copies of each objection, supporting documents, as well as a copy of the Notice submitted by the Objector, to Class Counsel and Defendants' Counsel by email delivery no later than three (3) days after receipt of the Objection.

(C)    If the Objector requests in writing to appear at a hearing with the Court to state his/her objection, Class Counsel shall promptly file the date-stamped Objection with the Court and request such a hearing. It is in the Court's discretion whether to schedule a hearing and allow the Objector or Objector's counsel to appear and/or speak at the hearing. If the Court schedules such a hearing, Class Counsel shall notify the Objector via first class U.S. Mail of the date, time, and location of the hearing. The Parties may file with the Court written responses to any filed Objection no later than three (3) days before the hearing. Any reasons not included in the written Objection shall not be considered by the Court.

(D)    Any Class Member who has elected to opt-out may not submit an Objection to the settlement.

(E)    An Objector may withdraw his or her Objection at any time.

(F)    If the Court rejects an Objection and the Class Member cashes a Settlement Check, the Class Member will still be bound by the terms of the Settlement. If the Court rejects an Objection and the Class Member does not cash a Settlement Check, the Class Member will still be bound by the release of the state law claims as set forth in Section 1.35.

**2.8    List and Calculations.**

(A)    No later than ten (10) days after the Opt-out Deadline, the Settlement Claims Administrator shall provide by email to Class Counsel and Defendants' Counsel: (a) a list of all Participating Class Members, (b) a list of all Objectors, and (c) a list of all Class Members who timely submitted an Opt-out Statement, with the version provided to Class Counsel replacing the name of each Class Member with a unique numerical identifier. Throughout the period of claims administration, the Settlement Claims Administrator shall also provide reports to the Parties every two weeks regarding (i) the status of the mailing of the Notices to Class Members, (ii) the status or progress of the claims administration process, (iii) anticipated or

11

expected distribution of the Settlement Checks, and (iv) any other aspect of the claims administration process. Beginning the second Friday after Notice is mailed to Class Members, the Settlement Claims Administrator shall provide counsel for the Parties a weekly update on the number of Objectors and Opt-outs.

(B)     No earlier than twenty-one (21) days after the Opt-Out Deadline, but not later than thirty (30) days after such time, the Settlement Claims Administrator shall provide notice by email to Class Counsel and Defendants' Counsel with an Excel spreadsheet that designates each Participating Class Member, his/her allocated Individual Gross and Net Amounts, and the estimated Employer Taxes ("Notice of Final Settlement Amount") in the form as described in Section 1.7.

**2.9     Termination of Agreement.**

(A)     **Procedures for Termination.**

(1)     If, after the Opt-out Deadline, more than eight (8) individuals submit Opt-out Statements, then Defendants shall have the option to terminate this Agreement. To terminate this Agreement, Defendants or Defendants' Counsel shall give written notice ("Notice of Termination"), sent via overnight delivery and via email, to Class Counsel no later than ten (10) days after the Opt-out Deadline. If Defendants exercise such option, the Parties will attempt in good faith to reach an agreement. To the extent that the Parties cannot reach an agreement within ten (10) days of receipt of Defendants' Notice of Termination, then Defendants will have been deemed to have terminated the Agreement unless Defendants withdraw their notice.

(B)     **Effect of Termination.** Termination shall have the following effects:

(1)     In the event this Agreement is terminated, the Parties will continue with the litigation of the Action as of the date of this Agreement with all rights and defenses intact as if no agreement had occurred including, but not limited to, revocation of the collective and/or class certification of the Settlement Class for settlement purposes.

(2)     Defendants shall have no obligation to make any payments to any Party, Plaintiff Ramirez, Opt-in Boateng, Class Member, Participating Class Member, or Class Counsel. Defendants shall be responsible for paying the costs, fees, and expenses of the Settlement Claims Administrator incurred up until the date of termination.

(3)     The Parties shall advise the Court of the termination and, in the event Notice of the settlement had been mailed to the Class Members, shall apply to the Court to have a single approved notice mailed to Class Members advising them of the termination. If approved by the Court, the Settlement Claims Administrator shall provide a Court-approved notice to Class Members and any Participating Class Members that the Agreement did not receive Final Approval and that, as a result, no payments will be made to Participating

Class Members or any Class Members under the Agreement. Such notice shall be mailed by the Settlement Claims Administrator via U.S. First Class Mail.

(4)     If this settlement is not consummated for any reason, including (1) a Termination under this Agreement, (2) a ruling by the Court declining to enter an Approval Order (including a reversal and/or modification on appeal of the Court's Approval Order), or (3) for any other reason not presently contemplated, then the Parties shall first endeavor to resolve the matter jointly and in good faith, including jointly or individually seeking reconsideration of any Court ruling if necessary and applicable. To the extent such efforts fail, the Parties may continue to litigate the Action as though this Agreement had never been executed, in accordance with subsection (1) of this Section 2.9(B).

## 2.10   Default.

(A)     **Notice of Default.** If Defendants fail to make any payment as required pursuant to Section 3.2(A), then Class Counsel shall provide notice of such missed payment to Defendants' Counsel, via email and overnight mail, no earlier than three (3) days after such missed payment ("Notice of Default"). After receipt of the Notice of Default, Defendants shall have fifteen (15) days to cure such default. If such default is not cured within the fifteen (15) day period following receipt of the Notice of Default ("Default"), then the delinquent payment shall accrue simple interest at the rate of 1.5% per month. Any additional monies paid under this Section will be allocated to the Net Settlement Fund.

(B)     The Parties agree that the Court will have continuing jurisdiction over any breach of the Agreement.

## 3.   PAYMENTS

**3.1     Gross Settlement Fund.** Defendants agree to pay up to the amount of the Gross Settlement Fund. The Gross Settlement Fund shall be used to satisfy all monetary obligations set forth herein, including to fully resolve and satisfy any and all amounts to be paid to all Participating Class Members, Court-approved Costs and Fees, any Service Awards, and the fees and costs of the Settlement Claims Administrator. The employer's share of Employment Taxes will be paid by Defendants separate and apart from the Gross Settlement Fund, subject to the provisions of Sections 3.3 and 3.7. All settlement payments as described herein to Class Members shall be deemed to be paid to such Class Members solely in the year in which such payments actually are received by the Class Members. It is expressly understood and agreed that the receipt of such settlement payments will not entitle any Class Member to additional compensation or benefits under any company bonus, contest or other compensation or benefit plan or agreement in place during the period covered by the Settlement, nor will it entitle any Class Member to any increased retirement, 401K benefits or matching benefits, or deferred compensation benefits. It is the intent of this Settlement that the settlement payments provided for in this Agreement are the sole payments to be made by Defendants to the Class Members, and that the Class Members are not

entitled to any new or additional compensation or benefits as a result of having received any settlement payment (notwithstanding any contrary language or agreement in any benefit or compensation plan document that might have been in effect during the period covered by this Settlement).

**3.2    Funding the QSF.**

(A)    Defendants shall deposit the amount up to but not exceeding the Gross Settlement Fund plus the employer's share of the Employment Taxes as calculated by the Settlement Administrator, subject to the provisions of Section 3.3 and 3.7, into the QSF (or to the Claims Administrator to be held in escrow if the QSF is not yet established) within the latter of (a) fifteen (15) days after the Opt-out Deadline or (b) fifteen (15) days from the date the Settlement Claims Administrator notifies Defendants that it has established the QSF and provides wiring instructions to Defendants.

**3.3    Employer and Employee Payroll Taxes.**

(A)    Payments made to Participating Class Members will be deemed 50% W-2 wage income and 50% 1099 miscellaneous income. Payments made as Costs and Fees and any Service Award will be considered 1099 non-wage income. All W-2 wage payments to Participating Class Members shall be subject to all applicable payroll and withholding Employment Taxes.

(B)    All applicable Employment Taxes will be paid out of the QSF by the Settlement Claims Administrator. Defendants will provide the Settlement Claims Administrator such information as is necessary for the Settlement Claims Administrator to make proper employee tax withholdings, issue and file tax-related forms, make appropriate tax payments and comply with all tax reporting obligations.

(C)    The Settlement Claims Administrator shall calculate all Employment Taxes including the appropriate and regular tax deductions from each Participating Class Member's Individual Gross Amount to determine the Individual Net Amount. The Individual Net Amount will be the amount reflected on the Settlement Checks.

(D)    Participating Class Members shall be solely responsible for the employee taxes on the payments identified above and agree to indemnify and hold harmless Defendants from all judgments, liabilities, penalties, interest, excise taxes, additions to tax, claims, damages, costs and expenses, including, but not limited to, reasonable attorneys' fees, which Defendants may hereafter sustain and be required to pay in connection with any of the payments above. Participating Class Members further acknowledge that neither Defendants, Defendants' Counsel, Class Counsel nor the Settlement Claims Administrator have made any representations regarding the tax treatment or consequences of any sums paid in connection with this Agreement.

(E)     Any unclaimed amounts that may remain will be used towards the reimbursement of the employer's share of the Employment Taxes pursuant to Section 3.7.

**3.4     Amounts Payable as Attorneys' Fees, Costs, and Expenses.**

(A)     In connection with the Motion for Approval, Class Counsel will petition the Court for an award from the Gross Settlement Fund and QSF of no more than $279,347.43 in fees and $15,652.57 in costs, for a total of Two Hundred Ninety-Five Thousand Dollars and Zero Cents ($295,000.00), as attorneys' fees, expenses and costs. Defendants shall not oppose this application in the foregoing amount, including any appeal or request for reconsideration if the application is denied or modified by the Court.

(B)     The substance of Class Counsel's application for attorneys' fees, expenses and costs is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the Settlement of the Action. The outcome of any proceeding related to Class Counsel's application for attorneys' fees, expenses and costs shall not terminate this Agreement or otherwise affect the Court's ability to rule on the Motion for Approval.

(C)     Any amount of the attorneys' fees, expenses and/or costs not approved by the Court will become part of the Net Settlement Fund.

**3.5     Service Awards to Plaintiff Ramirez and Opt-in Boateng.**

(A)     In the Approval Motion, Plaintiff Ramirez may apply to the Court to receive a Service Award of no more than $10,000, and Opt-in Boateng may apply to the Court to receive a Service Award of no more than $2,500, in return for services rendered to the Settlement Class.

(B)     The application for Service Awards is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the Settlement of the Action.  The outcome of the Court's ruling on the application for Service Awards will not terminate this Agreement or otherwise affect the Court's ability to rule on the Motion for Approval.

(C)     Any amount of the Service Award not approved by the Court will become part of the Net Settlement Fund.

**3.6     Allocation to Participating Class Members.**

 Each Participating Class Member's award shall be based on the actual hours worked or wages earned by the Participating Class Member as IRD Server at the RCW, as follows:

(A)     **Hours Worked or Wages Earned.** First, the total number of hours worked or wages earned by all Class Members as IRD Servers at the RCW during the Settlement Period, to the extent identifiable, shall be determined. To avoid confusion, this figure will reflect the total number of hours worked or wages earned by any and all persons in classifications and professions that

customarily receive gratuities, including, but not limited to, hourly non-exempt employees in-room dining ("IRD") workers (including, but not limited to, Server-PM-In Room Dining ("IRD Servers"), Attendant-Bellstand-PM ("Bellmen"), and Agent-Communications ("PBX" or "Order-takers") (collectively, "IRD Servers")) at the RCW within the Settlement Period and whose names appear on the Class List.

(B)     **Percentage Allocation.** Second, each Participating Class Member's percentage allocation shall be determined by (i) taking the number of hours worked or wages earned by the Participating Class Member as an IRD Server at the RCW during the Settlement Period and (ii) dividing it by the total identified as set forth in Section 3.6(A).

(C)     **Amount Allocation.** The Net Settlement Amount, shall be multiplied by each Participating Class Member's percentage allocation as calculated in Section 3.6(B). This represents the individual amount allocated to each Participating Class Member – or Individual Gross Amount.

(D)     **Floor Payment.** Notwithstanding the foregoing, no Participating Class Member shall receive less than $50.00 (gross). Any adjustment of a person's allocation necessary to reach the $50.00 (gross) floor shall be taken on a pro rata basis from the remaining Class Members. The allocations due to those Participating Class Members will be recalculated to account for the reallocated funds.

**3.7     Payments from the QSF.**

    (A)     **Disbursement of Funds.** Within ten (10) days after the QSF has been fully funded pursuant to Section 3.2, the Settlement Claims Administrator shall (i) mail all Settlement Checks to Participating Class Members in an amount equal to their Individual Net Amount, (ii) mail any Service Awards to Plaintiff Ramirez and Opt-in Boateng, (iii) wire-transfer payment to Class Counsel in the amount of Court-approved Fees and Costs, and (iv) pay all Employment Taxes to the appropriate government authorities due at such time.

    (B)     **Time to Cash Settlement Checks**. The Check Cashing Deadline for Participating Class Members to cash Settlement Checks shall be one hundred eighty (180) days from the date the checks are mailed by the Settlement Claims Administrator. Any Participating Class Member whose check is not cashed during that period shall be permitted to contact Class Counsel or the Settlement Claims Administrator and seek to have his or her check reissued up until the last day of the 180-day period. No check shall be reissued after the Cash Checking Deadline. However, a check may only be reissued to the Class Member if monies are still available in the QSF. The amount of any uncashed check(s) shall be returned to the QSF. After one hundred eighty (180) days after the mailing of the Settlement Checks, any unclaimed monies from uncashed checks in the QSF shall be allocated first to pay claims to individuals, if any, who should have been, but were not, included in the Class List or whose dates of employment as IRD Servers at the RCW or other data was incorrect. After the first allocation, any unclaimed monies may then be used to reimburse Defendants for their payment of the employer's share of the Employment

Taxes. Finally, any remaining unclaimed monies shall then be provided as *cy pres* to Children's Miracle Network Hospitals.

## 4. PLAINTIFF RAMIREZ AND OPT-IN BOATENG RELEASE OF CLAIMS.

**4.1**     In addition to the waiver and releases contained in Section 1.35 of this Agreement, upon the Final Effective Date, and except as to such rights or claims as may be created by this Agreement, Plaintiff Ramirez and Opt-in Boateng, knowingly and voluntarily, on their behalf, and on behalf of their respective current, former and future heirs, spouses, executors, administrators, agents, and attorneys, forever and fully release and discharge Defendants, and all of their present, past, and future owners, affiliates, related business entities, parent companies, subsidiaries, predecessors, successors, assigns, divisions, directors, officers, trustees, members, employees, managers, shareholders, representatives, insurers, business managers, accountants, attorneys, heirs, agents, executors, and administrators, as well as their hotel owners, in their individual and representative capacities, and all persons acting by, through, and under, or in concert with any of them (the "Releasees"), from all Released Class Claims as set forth in Sections 1.33 and 1.34 as well as any other claim of any kind under federal, state, or local law or common law, both known and unknown, based on any events that took place from the beginning of time through the Final Effective Date including, but not limited to, any alleged violation of: Title VII of the Civil Rights Act of 1965; The Civil Rights Act of 1991; Sections 1981 through 1988 of Title 42 of the United States Code; The Equal Pay Act; The Employee Retirement Income Security Act of 1974; The Immigration Reform and Control Act; The Consolidated Omnibus Budget Reconciliation Act; The Age Discrimination in Employment Act; The Americans with Disabilities Act of 1990; The Fair Labor Standards Act; The Fair Credit Reporting Act; The Sarbanes Oxley Act; The Occupational Safety and Health Act; The New York Corrections Law, including Sections 750-755 thereof; The Family and Medical Leave Act of 1993; The New York State Human Rights Law; The New York Civil Rights Law; The New York City Human Rights Law; The New York Labor Law; and any other federal, state, and/or local law, wage order or ordinance and any claim under the common law, tort, contract or equity.  This release includes all claims for all damages arising from any such released claims, including claims for liquidated damages, penalties, interest, and attorneys' fees and costs. Notwithstanding the foregoing general releases, the Plaintiff Ramirez and Opt-in Boateng each acknowledge that they have not made any claims or allegations related to discrimination, retaliation, or harassment, including sexual harassment, or sexual abuse, and none of the payments set forth as consideration in this Agreement are related to such discrimination, retaliation, or harassment, including sexual harassment, or sexual abuse.  For purposes of the release of claims under The Age Discrimination in Employment Act, the Plaintiff Ramirez and Opt-in Boateng each acknowledge that: (a) he read this Agreement and understands it; (b) he is signing this Agreement voluntarily in order to release his claims against the Defendants and Releasees in exchange for payment that is greater than he  would otherwise have received or been entitled to receive; (c) he was offered at least 21 days to consider his choice to sign this Agreement; (d) Defendants advise him to consult with an attorney; and (e) he knows that he can revoke this Agreement within 7 days of signing it and that the Agreement does not become effective until that 7-day period has passed; and; (f) he agrees that changes to this Agreement before its execution, whether material or immaterial, do not restart the time to review the Agreement.  To revoke the Agreement, contact Christopher A. Parlo in writing at Morgan, Lewis

& Bockius LLP 101 Park Avenue New York, New York 10178, fax number (212) 309-6001, within 7 days of signing the Agreement.

It is expressly understood and agreed that the Service Awards being paid to the Plaintiff Ramirez and Opt-in Boateng are in part being paid as consideration for their general release of claims and that the Service Awards would be smaller in the absence of this general release.  Plaintiff Ramirez and Opt-in Boateng must both participate in the Settlement and not opt out, and execute and not revoke this Agreement with this general release, as condition precedents to receiving their respective Individual Settlement Payment and Service Award.

**4.2**      Upon the Final Effective Date, and except as to such rights or claims as may be created by this Agreement, each Participating Class Member forever and fully releases and discharges Releasees, from all Released Class Claims as set forth in Section 1.35.

**4.3**      Except as provided in this Agreement, upon payment of all Costs and Fees as approved by the Court, Plaintiff on behalf of Plaintiff Ramirez, the Participating Class Members and Class Members, irrevocably and unconditionally releases, acquits, and forever discharges any claim that he may have against Defendants and Releasees for attorneys' fees, expenses, disbursements and all other costs and fees associated with Class Counsel's representation of Plaintiff Ramirez, Opt-in Boateng, and the Class.  Plaintiff Ramirez understands and agrees that any fee payments approved by the Court will be the full, final and complete payment of all attorneys' fees, expenses, disbursements and all other costs and fees associated with Class Counsel's representation in the Action.

**4.4**      Upon the Final Effective Date, and except as to such rights or claims as may be created by this Agreement, all Releasees shall be deemed to have, and shall fully, finally, and forever have, released, relinquished, and discharged Plaintiff Ramirez, Opt-in Boateng, and Class Counsel from all claims arising out of, relating to, or in connection with the institution, prosecution, assertion, settlement, or resolution of the Action or the Released Class Claims.

**4.5**      **No Re-hire**.  Plaintiff Ramirez agrees that Defendants and the Releasees shall have no obligation, contractual or otherwise, to hire, rehire or reemploy, contract with or engage, directly, indirectly or through a staffing or placement agency, Plaintiff Ramirez in any capacity in the future, and the provisions of this Agreement will apply to and bar any claims arising out of or relating to any decision by Defendants or the Releasees not to hire, rehire, contract with, engage or reemploy the Plaintiff Ramirez in the future.

**4.6**      **Stipulation of Dismissal.**  The Parties agree to execute a Stipulation of Dismissal With Prejudice to be filed by Defendants' Counsel upon distribution of the Gross Settlement Fund. Thereafter, the Court will continue to have jurisdiction to oversee the settlement process.

**5.    INTERPRETATION AND ENFORCEMENT**

**5.1**      **Non-Admission of Liability.**  By entering into this Agreement, Defendants in no way admit any violation of law or any liability whatsoever to Plaintiff Ramirez, Opt-in Boateng and/or the Class Members, individually or collectively, all such liability being expressly denied. Likewise, by entering into this Agreement, Defendants in no way admit to the suitability of this Action for class or collective action litigation other than for purposes of settlement.  Rather,

Defendants enter into this Agreement to avoid further protracted litigation and to fully and finally resolve and settle all disputes with the Plaintiff Ramirez, Opt-in Boateng and Class Members. Settlement of the Action, negotiation and execution of this Agreement, and all acts performed and documents executed pursuant to or in furtherance of this Agreement or the Settlement: (1) are not, shall not be deemed to be, and may not be used as an admission or evidence of any wrongdoing or liability on the part of Defendants, or any person acting on behalf of Defendants, or of the truth of any of the factual allegations in any and all complaints or other papers filed by the Plaintiff Ramirez and/or Opt-in Boateng, including on behalf of the Class, in the Action; and (2) are not, shall not be deemed to be, and may not be used as an admission or evidence of fault or omission on the part of Defendants in any civil, criminal, administrative, arbitral or other proceeding. The Parties understand and agree that this Agreement is a settlement document and shall be inadmissible in evidence in any proceeding, except an action or proceeding to approve, interpret, or enforce the terms of the Agreement.

**5.2     Effect of Non-Approval.**  In the event this Agreement is not approved by the Court on substantially the same terms as were submitted for approval, or if an appellate court reverses and/or modifies the Approval Order, then the Parties shall first endeavor to resolve the matter jointly and in good faith, including jointly or individually seeking reconsideration of any Court ruling if necessary or by involving a mutually agreed mediator. If such efforts to do not result in a new agreement between the Parties, then the Parties will resume litigation of the Action as of the date of this Agreement with all rights and defenses intact as if no agreement had occurred, including, but not limited to, revocation of the certification of the Settlement Class.

**5.3     Cooperation Between the Parties; Further Acts.**  The Parties shall reasonably cooperate with each other and shall use their reasonable best efforts to obtain the Court's approval of this Agreement and all its terms.  Each Party, upon the request of any other Party, agrees to perform such other and further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

**5.4     Confidentiality.**  Except as is required for purposes of settlement approval, or by a Court or applicable law, neither the Parties nor their counsel will at any time hold a press or media conference or similar press or media event, issue any press or other release, or (except as provided in the next sentence herein) post on any social media or other electronic forum, concerning the Settlement, this Agreement, any negotiations leading to the Settlement or any terms or conditions of the Settlement or this Agreement.  Counsel for either Party may include on their social media, web posting or other static outward facing description of firm activities (e.g. a Firm's annual report of results) a note reporting Final Approval of the Settlement without including any of the terms and conditions of the Settlement.  If asked, the Plaintiff Ramirez and Opt-in Boateng may state only that this matter has been amicably resolved.

**5.5     No Assignment.**  Class Counsel and the Plaintiff Ramirez, on behalf of the individual Class Members, as well as Opt-in Boateng, represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Action, or any related action.  Class Counsel, Plaintiff Ramirez and Opt-in Boateng also represent and warrant that they are unaware of any Class Member who has assigned or transferred, or purported to assign or

transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Action, or any related action.

**5.6     Entire Agreement.**  This Agreement constitutes the entire agreement between the Parties about the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

**5.7     Binding Effect.**  This Agreement shall be binding upon the Parties and, with respect to Plaintiff Ramirez, Opt-in Boateng and all Class Members, their families, representatives, heirs, administrators, executors, beneficiaries, conservators, insurers, attorneys, and assigns. Notwithstanding the passage of any legislation, bill, regulation, wage order or other change in the law that may materially affect the rights of Plaintiff Ramirez, Opt-in Boateng and all Class Members in the Action, this Agreement is binding.

**5.8     Arms' Length Transaction; Materiality of Terms.**  The Parties have negotiated all the terms and conditions of this Agreement at arms' length. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

**5.9     Captions.**  The captions or headings of the sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

**5.10     Governing Law.**  This Agreement shall in all respects be interpreted, enforced, and governed by and under the laws of the State of New York, without regard to choice of law principles.

**5.11     Continuing Jurisdiction.**  The Parties shall request the Court to retain jurisdiction over the interpretation and implementation of this Agreement as well as all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby, and consent to the jurisdiction of this Court for those purposes except as set forth herein.

**5.12     Waivers, etc. to Be in Writing.**  No waiver, modification, or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification, or amendment, subject to any required Court approval.  Any failure by any Party to insist upon the strict performance by the other Party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such Party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

**5.13     When Agreement Becomes Effective, Counterparts.**  Except for provisions of this Agreement requiring any Party to act or seek Court action prior to Court approval, which provisions are intended to be binding on the Parties upon mutual execution hereof, this Agreement shall become fully effective upon the Court's entering of an Approval Order subject to the terms of this Agreement.  It is understood that such date is not the Final Effective Date for settlement

implementation purposes, which is as defined above.  The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same instrument.

**5.14    Digital and Email Signatures.**  Any Party may execute this Agreement by causing its counsel to sign on the designated signature block digitally or physically below and transmitting that signature page via email to counsel for the other Party.  Any signature made and transmitted by email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the Party whose counsel transmits the signature page by email.

**5.15    Language.**  Plaintiff Ramirez certifies that he has full command of the English language and fully understands all provisions of this Agreement or has had the opportunity to have any word or phrase of this Agreement translated into Spanish for him if he believed that such translation was necessary for his full understanding of the entire Agreement. *Demandante Ramirez certifica que tiene completo conocimiento del idioma inglés y completamente entiende todas las provisiones de este Acuerdo o ha tenido la oportunidad de que se traduzca al español cualquier palabra o frase de este Acuerdo si considera que esa traducción era necesaria para su completo entendimiento del Acuerdo.*

**5.16    Construction.**  The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each Party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed or applied against any Party by virtue of draftsmanship.

**WE AGREE TO THE TERMS SET FORTH ABOVE**

_____

**Humberto Ramirez**


Date: 08 / 25 / 2022
_____

**Marriott International, Inc.**

By: _____

Name: _____

Title: _____

Date: _____


_____

**Michael Boateng**


Date: _____

**The Ritz-Carlton Hotel Company, LLC**

By: _____

Name: _____

Title: _____

Date: _____


_Approved as to Form:_

**Schneider Wallace Cottrell Konecky, LLP**


By: _____
        Carolyn H. Cottrell, Esq.


Dated: _____

**Morgan, Lewis & Bockius LLP**


By:_____
        Christopher A. Parlo, Esq.


Dated_____

Doc ID: 2481152353ecd7961a1ea252deac7df4f6bd6b76

**WE AGREE TO THE TERMS SET FORTH ABOVE**

**Marriott International, Inc.**

_____
**Humberto Ramirez**

By: _____

Name: _____

Date: _____

Title: _____

Date: _____

_____
**Michael Boateng**

**The Ritz-Carlton Hotel Company, LLC**

Date: 08 / 25 / 2022

By: _____

Name: _____

Title: _____

Date: _____

_Approved as to Form:_

**Schneider Wallace Cottrell Konecky, LLP**

By: _____
      Carolyn H. Cottrell, Esq.

Dated: _____

**Morgan, Lewis & Bockius LLP**

By:_____
      Christopher A. Parlo, Esq.

Dated_____

22

**WE AGREE TO THE TERMS SET FORTH ABOVE**

_____   **Marriott International, Inc.**
**Humberto Ramirez**

By: _____

Name: _____

Date: _____   Title: _____

Date: _____

_____   **The Ritz-Carlton Hotel Company, LLC**
**Michael Boateng**

By: _____

Date: _____   Name: _____

Title: _____

Date: _____

*Approved as to Form:*

**Schneider Wallace Cottrell Konecky, LLP**

By: _____
        Carolyn H. Cottrell, Esq.

Dated: \_\_8/26/2022_____

**Morgan, Lewis & Bockius LLP**

By:_____
        Christopher A. Parlo, Esq.

Dated_____

**WE AGREE TO THE TERMS SET FORTH ABOVE**

_____

**Humberto Ramirez**


Date: _____


_____

**Michael Boateng**


Date: _____


**Marriott International, Inc.**

By: _Katherine Y.K. Cheung_

Name: _Katherine Y.K. Cheung_

Title: _Vice President and Senior Counsel_

Date: _8/26/22_


**The Ritz-Carlton Hotel Company, LLC**

By: _Katherine Y.K. Cheung_

Name: _Katherine Y.K. Cheung_

Title: _Vice President and Senior Counsel_

Date: _8/26/22_


*Approved as to Form:*

**Schneider Wallace Cottrell Konecky, LLP**


By: _____
        Carolyn H. Cottrell, Esq.


Dated: _____


**Morgan, Lewis & Bockius LLP**

By: _____
        Christopher A. Parlo, Esq.


Dated  8/26/2022


22

# EXHIBIT A

## NOTICE OF SETTLEMENT OF CLASS AND COLLECTIVE ACTION LAWSUIT

### *RAMIREZ V. MARRIOTT INTERNATIONAL, INC., et al.,*
### United States District Court, Southern District Of New York
### Civil Action No. 7:20-CV-02397-PMH-PED

***The United States District Court, Southern District of New York authorized this notice. This is not a solicitation from a lawyer. This is not a lawsuit against you, and you are not being sued. However, your legal rights are affected whether you act or do not act.***

You are receiving this notice to inform you that you are eligible to participate in a Settlement reached in the above-referenced Action if you are or have been employed by Defendants Marriott International, Inc. or The Ritz-Carlton Hotel Company, LLC and performed work at the location commonly and formerly known as The Ritz-Carlton New York, Westchester (the "RCW") as an hourly non-exempt in-room dining ("IRD") worker (including, but not limited to, Server-PM-In Room Dining ("IRD Servers"), Attendant-Bellstand-PM ("Bellmen"), Agent-Communications ("PBX" or "Order-takers") (collectively, "IRD Servers")), at any time between March 18, 2014 through **[DATE of Full Execution of Agreement]**.  The Settlement Class does not include maintenance workers, corporate officers, salespersons, cooks, food preparers, chefs, dishwashers, directors, clerical staff, office workers, or any other person whose trade, classification, or profession does not customarily receive gratuities, unless an individual primarily holding those roles also performed work as an IRD Server at the RCW at any point during the Settlement Period.

Based on information in Defendants' records, you may be a class member who may be entitled to participate in the settlement of this class and collective action (the "Litigation" or "Action").  A settlement has been reached in this Action (the "Settlement").  This notice explains your right to share in the monetary proceeds of this Settlement, exclude yourself ("opt out") from the Settlement, or object to the Settlement. If you object to the Settlement, you cannot opt out of the Settlement, and you will be bound by the terms of Settlement in the event the Court denies your objection. **Please read this notice carefully.**

### YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT:

| | |
|---|---|
| **IF YOU WANT TO PARTICIPATE IN THE SETTLEMENT AND RECEIVE A SETTLEMENT PAYMENT** | If you are a Class Member as described above and you wish to participate in this settlement you do not have to do anything. Unless you opt-out as described in Section 9 below, you will automatically become a Participating Class Member and you will receive your Settlement check.<br><br>If you do nothing and receive a Settlement check, but choose not to cash your check, you will still be bound by the release of the state law claims as described in Section 15 below. You will, however, retain any right you have to bring any timely claims under federal law. If you choose to cash the check, you release both the state and federal claims, as described in Section 15 below. |

| | |
|---|---|
| **IF YOU WANT TO OBJECT TO THE SETTLEMENT** | If you do not opt-out of the Settlement (explained below), you may write to the Court about why you believe the Settlement is unfair or unreasonable.   If the Court rejects your objection and you cash a Settlement Check, you will still be bound by the terms of the Settlement. If the Court rejects your objection and you do not cash a Settlement Check, you will still be bound by the release of the state law claims as described in Section 15 below.  If you object, you may ask to appear before the Court to express your concerns about the fairness of the Settlement.  Procedures for objecting are described in Section 8 below. If you opt-out of this Action, as described in Section 9 below, you may not object and will not be bound by the Settlement. |
| **IF YOU WANT TO EXCLUDE YOURSELF (OPT OUT) FROM THE SETTLEMENT** | If you wish to exclude yourself ("opt-out") from the Settlement and not receive a payment, you must follow the directions outlined in Section 9 below. |

## 1.  What is this lawsuit about?

This lawsuit alleges that Marriott International, Inc. and The Ritz-Carlton Hotel Company, LLC ("Defendants")  failed to (1)  pay overtime wages as required under the Fair Labor Standards Act ("FLSA"); (2)  pay  compensation for "off-the-clock" work as required by New York Labor Law; (3) compensate for the additional wages required by the New York spread-of-wages law; (4)  remit all service fee surcharges; (5) compensate for all hours worked; (6)  remit the entirety of the service fee surcharges to IRD Servers and were, thus, unjustly enriched; (7)  provide accurate, itemized wage statements; and (8)  provide accurate and proper written wage notices. The claims are brought on behalf of IRD Servers, at any time between March 18, 2014 through **[DATE]**. The Plaintiff in the Action, Humberto Ramirez ("Plaintiff Ramirez"), for himself and others whom he claims are similarly situated, seeks to recover allegedly unpaid gratuities and wages, as well as interest, attorneys' fees, costs, and other relief.

Defendants vigorously deny that they violated any law, rule, or regulation or that they owe any service charges, gratuities, minimum wage, overtime, or wages of any kind, or failed to provide wage notices and/or statements, to any current or former employee of Defendants who worked at the RCW during the relevant period.  Defendants deny any liability and maintain that they have consistently acted in accordance with all governing laws at all times.  Defendants also deny that class or collective treatment is appropriate for the claims in this Action.

This Action is presently before the Honorable Judge Philip M. Halpern, of the United States District Court, Southern District of New York.  Judge Halpern has not made any decision on the merits of Plaintiff Ramirez's claims in the Action or whether the case, in the absence of this Settlement, may proceed on a class and/or collective basis.

## 2.  Why did I receive this notice?

You have received this notice because the records of Defendants show or suggest that you performed in-room dining service work for or on Defendants' behalf between March 18, 2014 and **[DATE]** at the location commonly known as the RCW and in such trades, classifications, and professions that customarily receive gratuities, including, but not limited to, IRD Server (among other positions).

## 3.  What is a class action and who brought this lawsuit?

A class action is a lawsuit where one or more persons sue not only for themselves, but also for other people.  These people are called class members ("Class Members").  In a class action, one court resolves the issues for all Class Members who do not opt-out of the Action.

This lawsuit was brought by the Plaintiff Ramirez, and an additional individual ("Opt-in Plaintiff") filed a form consenting to join the Action.  These individuals took a lead role in this Litigation and provided substantial assistance in its resolution.  In addition to their allocated shares as described in response to Section 6 below, they will receive an additional collective sum of Twelve Thousand Five Hundred Dollars ($12,500) for their time and efforts in bringing and/or participating in this Action and achieving this Settlement on behalf of themselves and the Class.

## 4.  Why is there a settlement?

The attorneys representing the Class Members ("Class Counsel") have intensively analyzed and evaluated the merits of the claims in this Action. Class Counsel, Plaintiff Ramirez, and Opt-in Plaintiff have entered into this Settlement based upon an analysis and evaluation of the relevant data, applicable law, the potential for an adverse ruling that might severely limit or terminate the ability of Class Members to recover for any alleged unpaid gratuities and wages, and the substantial risks of continued litigation, including the possibility that the Litigation, if not settled now, might not result in any recovery whatsoever or might result in a recovery that is less favorable and would not occur for several years.  Class Counsel, Plaintiff Ramirez, and Opt-in Plaintiff are satisfied that the terms and conditions of this Settlement are fair, reasonable, and adequate and that this Settlement is in the best interest of the Class Members.

Defendants deny the allegations in the Litigation and deny that they owe any workers any wages, gratuities, or other compensation.  However, to avoid the burden, expense, inconvenience, and uncertainty of continued litigation, Defendants have concluded that it is in their best interests to resolve and settle the lawsuit, without admitting any wrongdoing or liability.

## 5.  What does the Settlement provide?

Pursuant to the terms of the Agreement, Defendants have agreed to pay a Gross Settlement Fund to cover all potential claims, costs, fees, and service awards, not to exceed the aggregate sum of Four Hundred Forty-Five Thousand Dollars and Zero Cents ($445,000.00), to settle the Litigation. In addition to settlement payments, the money in the Gross Settlement Fund will be used to satisfy all monetary obligations of the Settlement, including to pay for claims administration fees and

costs, Service Awards to the Plaintiff Ramirez and the Opt-in Plaintiff, and Class Counsel's Fees, Costs, and Expenses. The complete terms and conditions of the Settlement may be obtained by reviewing the Settlement Agreement on the Court's docket at https://pacer.uscourts.gov/ (Dkt. No. ▮▮▮).

## 6.  How much is my settlement payment?

Your settlement payment, assuming the Settlement Agreement is approved by the Court and you do not validly and timely opt-out, will ultimately be based on a pro rata basis on the number of hours you worked or the wages you earned for or on behalf of Defendants as IRD Server at the RCW during the period between March 18, 2014 and **[DATE]**.  No Participating Class Member shall receive less than Fifty Dollars ($50.00).  For additional details, please refer to the Agreement that was filed with the Court.

Settlement checks to Participating Class Members will be deemed 50% wage income for which you will receive a IRS Form W-2 and shall be reduced by any regular and ordinary payroll tax deductions that need to be withheld, with the remaining 50% of any settlement payment to you being deemed miscellaneous income for which you will receive a IRS Form 1099.

If you participate in the Settlement, you will have 180 days to cash the settlement check. If at the conclusion of the 180-day check void period, there are any uncashed checks, those monies will be allocated first to pay claims to individuals who should have been, but were not, included in the Class List or whose dates of employment as IRD Servers at the RCW or other data was incorrect. After the first allocation, any unclaimed monies may then be used to reimburse Defendants for their payment of the employer portion of the Employment Taxes. Finally, any remaining unclaimed monies shall then be provided as *cy pres* to Children's Miracle Network Hospitals.

## 7.  How can I participate in the Settlement?

If you are a Class Member and you do not timely and validly opt-out, you will automatically become a Participating Class Member and you will receive your prorated Settlement Award. The Settlement Administrator will not make your payment until the Settlement is fully and finally approved by the Court and the deadline to opt-out has passed.

## 8.  How do I object to the Settlement?

If you do not opt-out of the Settlement, you may object to the Settlement if you do not like any part of it.  The objection must be in writing and must include all reasons for your objection, and any supporting documentation. You must also include your name, address and telephone number. The Court may consider your views. If you wish to appear before the Court to be heard, you must specifically request an opportunity to do so in your objection letter. It is in the Court's discretion whether to schedule a hearing and allow the Objector or Objector's counsel to appear and/or speak at the hearing. If the Court rejects your objection, you will still be bound by the terms of the Settlement.

To validly object, your objection must be mailed to the Settlement Administrator (**Rust Consulting, 625 Marquette Avenue, Suite 900, Minneapolis, MN 55402**) via U.S. First Class Mail, postage pre-paid, and postmarked by the United States Postal Service on or before on or before **[ADMINISTRATOR TO INSERT OBJECTION DEADLINE]**.

The Settlement Administrator will share your objection with Class Counsel and Defendants' counsel and your objection will be filed with the Court.  You will be contacted by the Settlement Administrator with the date, time and location of any Court hearing, should the Court wish to schedule one.  You may not object to the Settlement if you submit a letter requesting to exclude yourself or "opt-out" of the Settlement, because by doing so you are no longer a part of the case.

| **9.  How do I exclude myself (opt-out) of the Settlement?** |
|---|

If you do not wish to participate in this Settlement, and/or you want to keep the right to sue or continue to sue Defendants on your own about the legal issues asserted in this case, or which could have been brought in this case, then you must take steps to exclude yourself from this Settlement.

To exclude yourself, you must mail via U.S. First Class Mail, postage prepaid, a written, signed statement to the Settlement Administrator (**Rust Consulting, 625 Marquette Avenue, Suite 900, Minneapolis, MN 55402**) that states your name, address, and telephone number, and that you are opting out of the Settlement, for example, "I opt-out of the <u>Ramirez v. Marriott International, Inc., et al.</u> Action and Settlement" or words to that effect, which clearly express your desire to exclude yourself from this Settlement and this case.  You must include your name, address, and telephone number in the statement ("Opt-out Statement"). To be effective, the Opt-out Statement must be mailed to the Settlement Administrator on or before **[ADMINISTRATOR TO INSERT OPT OUT DEADLINE]**.

| **10.  What's the difference between objecting and excluding yourself (opting-out)?** |
|---|

Objecting is simply telling the Court that you do not like something about the Settlement.  You can object only if you do not exclude yourself from the Settlement.  Excluding yourself from the Settlement ("opting-out") is telling the Court that you do not want to be part of the Settlement.  If you exclude yourself, you have no basis to object because the case no longer affects you.

If you send an objection, it is not necessary for you to come to Court to discuss it, but you may do so at your own expense or pay your own lawyer to attend should a hearing be scheduled. If you postmarked, faxed, or emailed your written objection on time, the Court may consider it. You will be notified by the Settlement Administrator or Class Counsel of the date and location of the court appearance, should the Court schedule a hearing.

| **11.  What happens if I do not participate (I choose to opt-out) of the Settlement?** |
|---|

If you choose not to participate in (opt-out of) the Settlement, then you will not receive any money from this Settlement and will retain your right to sue Defendants as to the claims alleged, or that could have been alleged, in this Action. To obtain a payment, you must not opt-out.

If you do not opt-out but do not cash a Settlement check, you will still release any New York state law claims for any relief sought in, or which could have been sought in, this Action and you will not be able to sue Defendants on your own for such state claims. You will, however, retain any right you have to bring any timely claims under federal law.

## 12. Can Defendants retaliate against me for participating in this Action?

No. Your decision whether or not to participate in this Action will in no way affect your work or employment with Defendants or future work or employment with Defendants. It is unlawful for Defendants to take any adverse action against you as a result of your participation in this Action.

## 13. Do I have a lawyer in this case?

Yes.  The law firm of Schneider Wallace Cottrell Konecky, LLP, 2000 Powell Street, Suite 1400, Emeryville, California, 94608, Telephone: (415) 421-7100, has been designated by the Court as Class Counsel to represent you and the other Class Members.  You may contact Class Counsel with any inquiry related to this Action free of charge.  Their fees are being paid from the Gross Settlement Amount as described above.  If you wish to be represented by your own lawyer, you may hire one at your own expense.

## 14. How will the lawyers be paid?

Class Counsel has asked, and the Court has approved, payment in the amount of $295,000.00 for fees and costs. The requested fees pay Class Counsel for all the work that they have performed and will continue to perform in this Action, including, but not limited to, filing the Complaints, engaging in discovery, investigating the facts, drafting motion applications and defenses, attending court conferences, participating in mediation, and negotiating and overseeing the Settlement.

## 15. What is the legal effect of the Settlement?

In exchange for the Settlement payment made by Defendants in accordance with the Agreement, this Litigation will be dismissed with prejudice.

If you cash a Settlement check within 180 days of its mailing, then you will fully release and discharge Defendants and/or any of the Releasees, as defined in the Agreement, from any and all claims that were brought or could have been brought under the FLSA or New York State law (including without limitation the New York Labor Law, the Hospitality Wage Order, and/or common law) based on or arising out of the factual predicates and/or allegations in the Complaint against Defendants and/or any of the Releasees in connection with work you performed in in-room dining or banquets at the RCW based on or arising under the FLSA or New York State law, including without limitation, the New York Labor Law, the Hospitality Wage Order, and/or common law, whether known or unknown, for wages (including, but not limited to, minimum wages and overtime), gratuities, deductions, service charges, administrative charges, tips, interest on such claims, penalties, damages, liquidated damages, attorney's fees, expenses, disbursements, litigation costs and fees, restitution, or equitable relief, and all other claims that were or could have been asserted in the Action that arise from a common nucleus of operative facts and circumstances

6

under federal, state and local wage and hour laws, rules and regulations to the extent permitted by law, based on events that took place from March 18, 2014 through **[DATE]**.

All Participating Class Members who do not timely cash their Settlement Check by the Check Cashing Deadline will fully release and discharge Defendants and/or any of the Releasees, as defined in the Agreement, from: any and all non-FLSA wage and hour claims that were or could have been asserted in the Action in connection with work performed in in-room dining or banquets at the RCW for Defendants that arise from a common nucleus of operative facts and circumstances based on events that took place from March 18, 2014 through **[DATE]**.

| **16. When will the Court decide whether to approve the Settlement?** |
| --- |

The Court has approved the Settlement, concluding that the Settlement is fair, adequate, and reasonable and that the distribution of the Settlement amount is fair, adequate, and reasonable. The Settlement will go into effect unless the Court believes there are unresolved issues (including any based on any objections) and does not allow the parties to finalize the Settlement process or if the Settlement is terminated or otherwise becomes unenforceable.

| **17. Are there more details about the Settlement? What if I have any questions?** |
| --- |

This notice summarizes the Settlement. However, more details are in the Agreement, which is publicly available and may be reviewed on the Court's docket at https://pacer.uscourts.gov/ (Dkt. No.    ). You may also contact the Settlement Administrator (**Rust Consulting, 625 Marquette Avenue, Suite 900, Minneapolis, MN 55402, https://www.rustconsulting.com/public/contact**).

| **18. What if my name or address changes?** |
| --- |

If your name, mailing address and/or telephone number changes after you receive this Notice, you must notify the Settlement Administrator immediately. If you do not correct your address, any potential settlement check may be mailed to the address that is on file for you. Therefore, it is your duty to keep an updated address on file. The contact information for the Settlement Administrator is listed in Sections 8 and 9.