**SCHNEIDER WALLACE COTTRELL KONECKY LLP**

October 21, 2022

**Via ECF**
The Honorable Philip M. Halpern
United States District Judge
U.S. District Court, Southern District of New York
500 Pearl Street, Room 1950
New York, NY 10007

> Re: *Ramirez v. Marriott International, Inc., et al*, Case No. 7:20-cv-02397-PMH; Plaintiff's Unopposed Letter Motion to File Retainer Agreement Under Seal and Billing Detail Under Redaction

Dear Judge Halpern:

On August 26, 2022, the parties filed a joint letter motion for approval of their proposed settlement agreement. Dkt. Nos. 131–33. The Court denied the motion without prejudice on September 8, 2022, directing Plaintiff's counsel to, among other things, supplement its application for attorneys' fees with its retainer agreement for the case ("Retainer Agreement") and with detailed time entries for each timekeeper who worked on the case ("Billing Detail"). Dkt. No. 134, p. 2.

Pursuant to the United States District Court for the Southern District of New York's Electronic Case Filing Rules & Instructions § 6.1 and your honor's Individual Practices § 5, I write on behalf of Plaintiff Humberto Ramirez and the putative Class and Collective members to respectfully request leave to file the Retainer Agreement under seal, Judge's eyes only, and to redact privileged information from the Billing Detail. Defendant does not oppose this letter motion.

The Retainer Agreement, attached as **Exhibit A** to the Declaration of Ori Edelstein, should be sealed because it contains Plaintiff's private information and has no bearing on the public's assessment of the Court's exercise of power, because it contains attorney work product and proprietary information, and because it is a privileged attorney-client communication. Likewise, the Billing Detail, attached as **Exhibit B** to the Declaration of Ori Edelstein, contains privileged information not necessary to the Court's evaluation of its reasonableness and should be redacted.

**A. The Retainer Agreement contains sensitive personal information and does little to aid the public's assessment of the judicial function**

The public is entitled to a common-law presumption of access to court documents. *See Lugosch v. Pyramid Co.*, 435 F.3d 110, 119 (2d Cir. 2006). In determining whether to ultimately allow such access, however, courts weigh "competing considerations," including "the privacy interests of those resisting disclosure," the "sensitivity of the information" and the potential for misuse of the information if disclosed. *United States v. Amodeo*, 71 F.3d 1044, 1050–51 (2d Cir. 1995). The Court has wide discretion to use its "supervisory power" to deny access to "sensitive personally identifying information contained in court documents." *See Kleftogiannis v. Inline*

Case 7:20-cv-02397-PMH-PED   Document 139   Filed 11/02/22   Page 2 of 5



*Plastics Corp.*, 411 F. Supp. 3d 216, 232 (2d Cir. 2019) (listing examples of divergent scenarios in which courts used supervisory power to limit access to information).

Here, Plaintiff's privacy interests weigh in favor of sealing the Retainer Agreement, and the public has no countervailing interest in its disclosure. Unlike the proposed settlement agreement—which Plaintiff acknowledges should be accessible to the public—the Retainer Agreement has "no direct bearing upon the public's assessment" of the Court's approval of the proposed settlement in this action. *United States v. Kravetz*, 706 F.3d 47, 62 (1st Cir. 2013). The Retainer Agreement is but one of many exhibits to the parties' motion for settlement approval and is only relevant to Plaintiff's counsel's application for attorneys' fees. Moreover, even its relevance there is tenuous; exhibits showing Plaintiff's counsel's lodestar calculation, for example, are much more relevant to the Court's assessment of Plaintiff's counsel's application. *See, e.g.*, *Raniere v. Citigroup Inc.*, 310 F.R.D. 211, 220-21 (S.D.N.Y. 2015).

On the other side of the scale, Plaintiff's identifying information and the details of the nature of his relationship with counsel are exactly the kind of "highly personal" information that "may overcome the presumption of public access." *Kravetz*, 706 F.3d at 62. Under *Amodeo*, the potential for a member of the public to use this sensitive information to "gratify private spite" or otherwise harm Plaintiff must be considered. *Amodeo*, 71 F.3d at 1051 (internal quotation marks omitted). Here, those competing considerations outweigh the values underlying the presumption of access. Because the contents of the Retainer Agreement are of negligible relevance to the public's ability to monitor the judicial power and include sensitive information susceptible to misuse, the Court should allow Plaintiff to file the Retainer Agreement under seal.

**B. Disclosure of the Retainer Agreement would expose attorney work product and proprietary information and violate the attorney-client privilege**

Although some courts may not consider retainer agreements or fee agreements privileged, courts do not make such determinations simply based on their labels as "retainer agreements" or "fee agreements." Instead, courts will review documents on a case-by-case basis to determine whether they contain privileged information. *See Stopka v. Am. Family Mut. Ins. Co.*, 816 F. Supp. 2d 516, 532-33 (N.D. Ill. 2011). Here, the Retainer Agreement contains legal advice, attorney impressions, and proprietary language original to Plaintiff's counsel. As such, it goes beyond "client identity and fee information" and presents "special circumstances" warranting protection. *See Richards v. Cordis Corp.*, No. 5:17-cv-178 (BKS/ATB), 2022 U.S. Dist. LEXIS 36051, *9 (N.D.N.Y. Mar. 1, 2022).

First, the Retainer Agreement implicates the work-product doctrine, which provides that "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative . . . ." FED. R. CIV. P. 26(b)(3)(A). "Documents covered by the privilege include materials that reveal an attorney's mental impressions and opinions about a case, as well as the results of an attorney's factual investigation in anticipation of litigation." *Mermerlstein v. United States DOJ*, No. 19-CV-00312 (GRB)(JMW), 2021 U.S. Dist. LEXIS 149445, *19 (E.D.N.Y. Aug. 4, 2021).



*Plaintiff's Unopposed Letter Motion to File Retainer Agreement Under Seal*
October 21, 2022
Page 3 of 5

Of these two categories, Courts afford an attorney's mental impressions and opinions—known as "opinion work product"—greater protection than fact work product. *Cohen v. City of New York*, 255 F.R.D. 110, 125 (S.D.N.Y. 2008) (internal quotation marks omitted); *see also McDaniel v. Freightliner Corp.*, No. 99 Civ. 4292 (FM), 2000 U.S. Dist. LEXIS 3497, *22 (S.D.N.Y. Mar. 23, 2000) (explaining that the work product doctrine applies "particularly when disclosure of [the relevant] information would reveal the attorney's thinking and strategy, *i.e.*, opinion work product"). Ultimately, the test for determining whether a document is attorney work product is whether the document "'can fairly be said to have been prepared . . . because of the prospect of litigation.'" *Hallmark Cards, Inc. v. Murley*, 2010 U.S. Dist. LEXIS 120186, *15 (S.D.N.Y. Nov. 9, 2010) (quoting *Rodriguez v. SLM Corp.*, No. 07 Civ. 1866 (WWE), 2010 U.S. Dist. LEXIS 33639, *8 (D. Conn. Apr. 5, 2010).

Here, the Retainer Agreement easily satisfies this standard. Plaintiff's counsel prepared the Retainer Agreement for one purpose: to litigate Plaintiff's and the putative Class and Collective members' claims. If litigation were not anticipated, the Retainer Agreement would not exist. The Retainer Agreement also provides insight into Plaintiff's counsel's thinking and strategy with respect to the management of the lawsuit. It contains mental impressions and opinions regarding Plaintiff's potential claims and the legal scenarios that may ensue from the filing of such litigation. Accordingly, the Retainer Agreement is attorney work product and should be filed under seal.

Second, the Retainer Agreement contains unique, proprietary information, disclosure of which would put Plaintiff's counsel at a competitive disadvantage with other firms. The Retainer Agreement was specifically tailored by Plaintiff's counsel for engaging its clients. The public filing of the Retainer Agreement would place Plaintiff's counsel at a unique disadvantage relative to other potential plaintiffs' attorneys around the nation who would be able to reap the benefit of the language crafted by Plaintiff's counsel. This outcome would be unfair to Plaintiff's counsel and constitute an unearned windfall to other firms who might use the Retainer Agreement if it were not to be filed under seal.

Third, the Retainer Agreement is protected by the attorney-client privilege because it "was made in contemplation of future professional action by the attorney." *In re Grand Jury Subpoena*, 599 F.2d 504, 510 (2d Cir. 1979); *see also Scott v. Chipotle Mexican Grill, Inc.*, 94 F. Supp. 3d 585, 596 (S.D.N.Y. 2015) ("A document may be privileged as an attorney-client communication when the predominant purpose of the communication is to render or solicit legal advice.") (internal quotation marks omitted). In cases where retainer agreements are deemed not privileged, it is because they reveal merely the fact that an attorney was retained. *See Richards*, 2022 U.S. Dist. LEXIS 36051; *Antolini v. McCloskey*, No. 1:19-cv-09038 (GBD) (SDA), 2021 U.S. Dist. LEXIS 224360, *25 n.17 (Nov. 19, 2021). The "fact of retention is not privileged, but the terms of the retention are." *In re Colton*, 201 F. Supp. 13, 16 (S.D.N.Y. 1961).

Here, the Retainer Agreement is far more than mere evidence of retention. It explains not only Plaintiff's counsel's basic scope of representation, but also discusses legal scenarios and types of action Plaintiff's counsel may or may not take throughout the litigation. It advises Plaintiff of his strategic options in various situations (*e.g.*, adding vs. not adding related claims to the complaint) and outlines his duties as a potential Class representative. Notably, the retainer


Agreement does not contain any reference to dollar amounts to be paid to Plaintiff's counsel. Thus, it is unlike the "fee information" typically excluded from protection and more like privileged legal advice between an attorney and his client. The Retainer Agreement's strategic discussions and comprehensive roadmap of Plaintiff's specific duties in relation to the litigation constitute

privileged information and legal advice beyond mere rote description of the general terms of an attorney-client relationship. As a result, the Retainer Agreement is a privileged attorney-client communication and should be filed under seal.

### C. The Billing Detail contains privileged information irrelevant to the reasonableness of the fees

Because attorney billing records typically contain privileged information, courts commonly allow attorneys to redact their billing records before submitting them to the court for an assessment of their reasonableness. *See Rich v. Am. Ass'n of Adver. Agencies*, No. 18 Civ. 3332 (ER), 2019 U.S. Dist. LEXIS 210408, *2–3 (S.D.N.Y. Dec. 5, 2019); *Excellent Home Care Servs., LLC v. FGA, Inc.*, 13 CV 5390 (ILG) (CLP), 2017 U.S. Dist. LEXIS 176017, *18 (E.D.N.Y. Oct. 23, 2017). Redactions that "cover the subject matter" of an attorney's billed action "while leaving the record of [the action] intact" are permissible as long as the court "has sufficient information to ascertain that the proposed attorney's fees are reasonable in light of the work done by the attorney." *Rich*, 2019 U.S. Dist. LEXIS 210408 at *2–3.

Here, the Billing Detail contains privileged descriptions of communications between Plaintiff and his attorneys and of specific work performed that go beyond what the Court needs to assess the reasonableness of the fees. Plaintiff's proposed redactions leave the record of the attorneys' actions intact, redacting only the privileged subject matter of the attorneys' actions. For example:

- "Phone call with Humberto Ramirez re: [redacted]"
- "Prepared correspondence with Humberto Ramirez re: [redacted]"
- "Researched NY Rules and regulations regarding [redacted]"
- "Prepare and send email to Boateng re: [redacted]"

The vast majority of the Billing Detail's entries are not redacted at all, and, as shown above, those that are still provide the Court with sufficient information to ascertain that the proposed fees are reasonable in light of the work performed. Accordingly, the Court should allow Plaintiff to file the Billing Detail under redaction.

### D. Defendant does not oppose this motion

As stated above, Defendant does not oppose this letter motion. The parties have executed a revised joint motion for settlement approval and an addendum to the proposed settlement agreement that addresses the additional concerns articulated by the Court in its September 8, 2022 Order. The Court's permission to file the Retainer Agreement under seal is the final hurdle to clear; once leave is granted, the parties will promptly file their revised joint motion for settlement


approval, along with the proposed settlement agreement, the addendum to the proposed settlement agreement, and all other relevant exhibits.

### E. Conclusion

For the foregoing reasons, Plaintiff respectfully requests that the Court grant Plaintiff's motion to file the Billing Detail under redaction and the Retainer Agreement under seal, Judge's eyes only.

>  Respectfully submitted,
>
>  Schneider Wallace
>  Cottrell Konecky LLP
>
>  */s/ Ori Edelstein* _____
>  Ori Edelstein
>
>  *Attorney for Plaintiff and the putative*
>  *Class and Collective members*

cc: All Counsel of Record (via ECF)

---

Application granted in part. Plaintiff may redact privileged information from counsel's billing entries, as proposed in Doc. 137-2.

Plaintiff's request to file the entirety of his retainer agreement with counsel under seal is denied. "[R]etainer agreements containing fee and other client information are not considered privileged 'in the absence of special circumstances' because 'they are not the kinds of disclosures that would not have been made absent the privilege and their disclosure does not incapacitate the attorney from rendering legal advice.'" *Doe v. Sarah Lawrence*, No. 19-CV-10028, 2021 WL 197132, at *7 (S.D.N.Y. Jan. 20, 2021) (quoting *Vingelli v. United States*, 992 F.2d 449, 452 (2d Cir. 1993)). To the extent Plaintiff seeks to redact privileged information relating to litigation strategy from his retainer agreement, he may submit an application to do so in accordance with the S.D.N.Y. Local Rules and the Court's Individual Practices.

The Clerk of Court is respectfully directed to terminate the motion sequence pending at Doc. 136.

SO ORDERED.

_____
Philip M. Halpern
United States District Judge

Dated: White Plains, New York
         November 1, 2022