UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

HUMBERTO RAMIREZ,

           Plaintiff,

-against-

MARRIOTT INTERNATIONAL., et al.,

           Defendants.

**OPINION & ORDER**

20-CV-02397 (PMH)

---

PHILIP M. HALPERN, United States District Judge:

    Humberto Ramirez ("Ramirez"), individually and on behalf of all others similarly situated, commenced this putative class and collective action against Marriott International, Inc. and The Ritz-Carlton Hotel Company, LLC (together, "Defendants") on March 18, 2020. (Doc. 1). The First Amended Complaint was filed on April 17, 2020 (Doc. 8), and the Second Amended Complaint was filed on July 9, 2020. (Doc. 32, "SAC"). Opt-in Plaintiff Michael Boateng ("Boateng" and with Ramirez, "Plaintiffs") joined the action on May 25, 2021. (Doc. 67). Plaintiffs alleged, *inter alia*, that Defendants engaged in a practice of retaining proceeds from service and delivery fees charged to in-room dining customers in violation of the Fair Labor Standards Act ("FLSA") and New York Labor Law § 196-d.

    Plaintiffs filed a pre-motion letter seeking conditional certification of the case and Defendants filed a pre-motion letter in contemplation of a motion for summary judgment. (Doc. 76; Doc. 107). The parties, however, reached a settlement in principle before a conference could be held and their respective motions filed. (*See* Doc. 123). The parties filed a joint motion seeking approval of a proposed settlement agreement on September 1, 2022. (Doc. 133; Doc. 133-1). The Court, however, denied the parties' motion without prejudice on September 8, 2022. (Doc. 134). The parties re-filed a joint motion seeking approval of the proposed settlement agreement on

October 21, 2022. (Doc. 135, "Fees Br."; Doc. 135-1, "Settlement Agreement"; Doc. 135-3, "Cost Report"). Plaintiffs' counsel separately filed redacted versions of their billing records and retainer agreement on October 21, 2022. (Doc. 137-1, "Retainer"; Doc. 137-2, "Billing Records").[1]

On November 2, 2022, the Court approved the Settlement Agreement, "except to the extent it relates to attorneys' fees [and costs]," as fair and reasonable. (Doc. 139). Pursuant to § 3.4 of the approved Settlement Agreement, the Court now separately considers Plaintiffs' counsel's request for attorneys' fees and costs. (*See* Settlement Agreement at 15).

For the reasons set forth below, that request for attorneys' fees and costs is GRANTED IN PART.

## BACKGROUND

Defendants operate a chain of hotels, restaurants, and resorts throughout the United States. (SAC ¶ 33). Their operations include the Ritz-Carlton, Westchester ("RCW"), located in White Plains, New York. (*Id.*). Ramirez was employed by Defendants as an in-room dining server at RCW from 2015 through November 2019. (*Id.* ¶¶ 9, 34). Ramirez received an hourly wage of $8.40, worked more than forty hours every week, and alleged that he was underpaid therefor. (*Id.* ¶ 34). Boateng pressed similar claims. (Doc. 66-1).

The parties settled Plaintiffs' claims—with Court approval in accordance with *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015) and its progeny—for $445,000. (Settlement Agreement at 4). The single issue standing in the way of distributing the settlement to the Settlement Class is the amount of the attorneys' fees sought by Plaintiffs' counsel.[2]

---

[1] The Court reviewed unredacted versions of these documents under seal but cites herein to the redacted versions in order to respect the confidentiality concerns previously expressed by Plaintiffs.

[2] The definitions for defined terms in the Settlement Agreement, unless noted otherwise, are adopted herein.

2

Between February 21, 2020 and August 26, 2022 (i.e., from counsel's first encounter with Plaintiffs through the filing of the request to approve fees), counsel billed approximately 897.45 hours. (Doc. 137-2, "Fees Br., Ex. B"). The tasks completed during that time period, according to Plaintiffs' counsel, included:

> preparing and filing a complaint, first amended complaint, and second amended complaint; opposing Defendants' Partial Motion to Dismiss; appearing for conferences; preparing for summary judgment by responding to Defendants' 56.1 Statement and preparing Plaintiff's own statement; preparing and serving 107 Requests for Admission on Defendant Marriott and 106 on Defendant Ritz-Carlton, 61 Requests for Production to each Defendant, and 14 Interrogatories to each Defendant, as well as reviewing the responses and multiple sets of amended responses to the same; objecting and responding to 19 Interrogatories and 29 Requests for Production served by Defendants; reviewing and responding to correspondences [sic] from Defendants regarding perceived deficiencies in Plaintiff's discovery responses, and preparing at least two meet and confer letters regarding deficiencies in Defendants' responses; filling [sic] letters to request that the scope of discovery be expanded and requesting permission to file a motion to compel discovery, and providing the Court updates on the status of discovery issues; preparing Plaintiff for his two days of deposition and defending the same; preparing for and taking five other depositions; and preparing and/or revising documents related to settlement and approval.

(Fees Br. at 9). Forty-one (41) different timekeepers were staffed on the matter to complete these tasks. Counsel proposes the following hourly rates for the time billed: $1,105 for partners, $680 to $995 for counsel and associates, and $250 to $500 for non-attorney staff. Counsel claims a lodestar value of $650,928 for their work performed and seeks $295,000 in reimbursement for fees and costs. The attorneys' fees and costs sought represents approximately 66.3% of the settlement.

---

Settlement Class is defined as "all individuals who are or who have been employed by Defendants as hourly non-exempt in-room dining workers . . . at the RCW within the Settlement Period and who are included on the Class List." (Settlement Agreement at 6). The parties estimate that the Settlement Class constitutes "approximately 50 employees." (Fees Br. at 6).

3

## STANDARD OF REVIEW

The FLSA instructs that "[t]he court . . . shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant . . . ." 29 U.S.C. § 216(b). The NYLL likewise provides that a prevailing employee may recover "reasonable attorney's fees." *See* N.Y. Lab. Law §§ 198(1-a), (1-d); *see also Francois v. Mazer*, 523 F. App'x 28, 29 (2d Cir. 2013) ("Reasonable attorney's fees and costs are awarded as a matter of right to a prevailing plaintiff in an action under the FLSA or NYLL."). "[T]he burden of proving the reasonableness and the necessity of the hours spent and the rates charged" rests with the party seeking payment. *Cortes v. Juquila Mexican Cuisine Corp.*, No. 17-CV-03942, 2021 WL 1193144, at *1 (E.D.N.Y. Mar. 29, 2021). While determining the reasonable fee in any specific scenario is a matter of discretion for the Court, "[t]he Supreme Court and Second Circuit have held that 'the lodestar—the product of a reasonable hourly rate and the reasonable hours required by the case—creates a presumptively reasonable fee.'" *Garcia-Severino v. TDL Restoration, Inc.*, No. 18-CV-11401, 2020 WL 7239678, at *1 (S.D.N.Y. Dec. 9, 2020) (quoting *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011)); *see also Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010) (explaining that "the lodestar method produces an award that *roughly* approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case" (emphasis in original)).

However, "even where attorneys' fees are sought pursuant to the percentage of the fund method, 'counsel must submit evidence providing a factual basis for the award.'" *Picorelli v. Watermark Contractors Inc.*, No. 21-CV-02433, 2022 WL 2386761, at *4 (S.D.N.Y. July 1, 2022) (quoting *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 336 (S.D.N.Y. 2012); *see also Guareno v. Vincent Perito, Inc.*, No. 14-CV-01635, 2014 WL 4953746, at *2 (S.D.N.Y. Sept. 26, 2014)

4

("Counsel must provide a factual basis for a fee award, typically with contemporaneous time records."). A proper fee request includes "contemporaneous billing records documenting, for each attorney, the date, the hours expended, and the nature of the work done." *Picorelli*, 2022 WL 2386761 at *4 (citing *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 181 (S.D.N.Y 2015)). Where the percentage recovery sought by counsel is inappropriate, "[a] district court calculates [and may award] the presumptively reasonable fee by multiplying the reasonable number of hours that the case requires by the reasonable hourly billing rate." *Gamero v. Koodo Sushi Corp.*, 328 F. Supp. 3d 165, 172 (S.D.N.Y. 2018) (citing *Millea*, 658 F.3d at 166).

## ANALYSIS

The parties settled this wage and hour case for a total amount of $445,000. Plaintiff's counsel seeks an award of $295,000 in fees and costs.[3] "Although the Second Circuit has 'repeatedly rejected the notion that a fee may be reduced merely because the fee would be disproportionate to the financial interest at stake in the litigation,' except in 'extraordinary cases, courts in this District have declined to award fees representing more than one-third of the total settlement amount.'" *Picorelli*, 2022 WL 2386761 at *4 (quoting *Fisher v. SD Protection Inc.*, 948 F.3d 593, 602 (2d Cir. 2020), and collecting in-District cases rejecting 36%, 40% and 43.6%, and 52% fee awards). It is error for a district court to impose a "maximum fee percentage" of 33% in an FLSA action and there is no explicit limit on the recovery of fees. *Fisher*, 948 F.3d at 602. However, "one-third of the total award is the customary contingency percentage in FLSA cases." *Garcia v. Atlantico Bakery Corp.*, No. 13-CV-01904, 2016 WL 3636659, at *1 (S.D.N.Y. June 29, 2016). Moreover, courts typically review applications for fees exceeding one-third with greater

---

[3] Plaintiffs' retainer agreement permits counsel to ask "the court to award or approve reasonable attorneys' fees" and does not specify a percentage contingency amount or hourly rate. (*See* Retainer at 4).

scrutiny and only approve such awards where extraordinary circumstances are present. *See, e.g. Gonzalez v. Fresh Start Painting Corp.*, No. 18-CV-11124, 2022 WL 3701096 (S.D.N.Y. Aug. 26, 2022); *Picorelli*, 2022 WL 2386761.

Plaintiffs' counsel nevertheless urges that their requested award is warranted based on "counsel's contemporaneous time records, documenting the hours expended and the nature of work performed, as well as information regarding counsel's experience and practice." (Fees Br. at 9 (quoting *Sarit v. Westside Tomato, Inc.*, No. 18-CV-11524, 2021 WL 2000328, at *2 (S.D.N.Y. May 19, 2021))). On this set of facts, the Court disagrees. A $295,000 attorneys' fees and costs recovery is simply unreasonable in this straightforward case. The Court, accordingly, will award Plaintiffs' counsel a reasonable fee in accordance with the lodestar adjustments described herein.

Plaintiffs' counsel asserts a lodestar value of $650,928, a product of 897.45 hours billed by 41 different timekeepers, which represents simply too many timekeepers spending too much time on a straightforward matter. The hourly rates are well above any reasonable rates charged by attorneys in this type of case in the Southern District of New York. The Court will therefore adjust this lodestar figure in light of the contemporaneous time records submitted by Plaintiffs.

I. <u>Hourly Rates</u>

Plaintiffs' counsel staffed forty-one (41) timekeepers to this matter, including two (2) partners, sixteen (16) counsel and/or associates, and twenty-three (23) non-attorney staff. (Fees Br., Ex. 5). Plaintiffs' counsel seeks an hourly rate of $1,105 for the partners on the case, between $680 and $995 for the counsel and/or associates, and between $250 and $500 for the non-attorney staff.

Reasonable hourly rates are those "in line with [rates] prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation." *Cruz v.*

6

*Loc. Union No. 3 of Int'l Bhd. Of Elec. Workers*, 34 F.3d 1148, 1159 (2d Cir. 1994) (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984) (alteration in original)); *see also Picorelli*, 2022 WL 2386761 at *5 ("the Court must determine the reasonable hourly rate by considering the 'prevailing market rate for lawyers in the district in which the ruling court sits.'" (quoting *Anthony v. Franklin First Fin., Ltd.*, 844 F. Supp. 2d 504, 507 (S.D.N.Y. 2012))). Judge Karas identified in *Picorelli* less than 9 months ago that, "[i]n this district, courts generally award experienced wage-and-hour attorneys between $300 and $400 per hour." *Picorelli*, 2022 WL 2386761 at *5 (citing *Agureyev v H.K. Second Ave. Rest., Inc.*, No. 17-CV-7336, 2021 WL 847977, at *11 (collecting cases)).

Plaintiffs' counsel cites to a single case for the proposition that "[c]ourts in this District have found rates similar to [those requested herein] reasonable." (Fees Br. at 12 (citing *Raniere v. Citigroup, Inc.*, 310 F.R.D. 211, 220-21 (S.D.N.Y. 2015))). The case cited by counsel is distinguishable. First, the court in *Raniere* approved rates of $650-$900 per hour for partners, $350-$600 per hour for associates, and $180 per hour for staff and paralegals. *Raniere*, 310 F.R.D. at 221. The *low ends* of the ranges requested by Plaintiffs' counsel herein substantially exceed the *high ends* of the ranges set in *Raniere* for each of the three categories of timekeepers. Second, counsel in *Raniere* requested a one-third contingency award and the court reviewed the lodestar with considerably less scrutiny than that required here. *Id.* at 221 ("Since the lodestar method is being used as a cross check, it is enough to note that the one third award is roughly commensurate with the work performed by class counsel."). Judge Karas distinguished *Raniere* in *Picorelli*, noting that "in *Raniere*, the counsel requested one third of the settlement in fees, while in this case, Plaintiff's counsel is requesting two-thirds." *Picorelli*, 2022 WL 2386761 at *5. Plaintiffs' counsel here too requests two-thirds of the settlement and *Raniere* is, therefore, inapposite. The remaining cases cited by Plaintiffs in support of their requested rates are all from courts in California. Those

7

cases are unpersuasive when this Court is required to determine the prevailing rate *in this district*. *See Wong v. Hunda Glass Corp.*, No. 09-CV-04402, 2010 WL 3452417, at *2 (S.D.N.Y. Sept. 1, 2010) ("To determine the prevailing rate, courts may conduct an empirical inquiry based on the parties' evidence or may rely on the court's own familiarity with the rates if such evidence is not submitted." (internal quotation marks omitted) (emphasis added)). This Court found reasonable in *Gonzalez* an hourly rate of $500 for law firm partners. *See Gonzalez*, 2022 WL 3701096, at *3. The Court, accordingly, sees no reason to exceed a $300-$500 hourly rate range for attorneys, established as prevailing in the District by *Picorelli* and *Gonzalez*.[4]

The prevailing hourly rate for non-attorney staff, including law clerks, paralegals, and clerical staff, is $100 in this District. *See Gonzalez*, 2022 WL 3701096, at *3 (reducing the hourly rate for a "certified fraud examiner, senior compliance administrator, and paralegal" from $150 to $100); *Morales v. MW Bronx*, No. 15-CV-06296, 2017 WL 4444663, at *2-3 (S.D.N.Y. Oct. 5, 2017) (finding an hourly rate of $100 "for the services of legal support staff members" reasonable); *Guo v. Tommy's Sushi, Inc.*, No. 14-CV-03964, 2016 WL 452319, at *4-5 (S.D.N.Y. Feb. 5, 2016) (reducing the hourly rate from $150 to $100 for "a paralegal, interpreter, and law clerk").

The Court, in its discretion, will apply the upper end of the attorney hourly range ($500) to the hours billed by partners, the lower end of the attorney range ($300) to the hours billed by

---

[4] This rate reduction is not meant to denigrate Plaintiffs' counsel's hourly rate or indicate that they may not have provided sufficient services to their clients; rather, "[t]he reasonable hourly rate is the rate a paying client would be willing to pay" in this District. *136 Field Point Circle Holding Co. LLC v. Razinski*, No. 19-CV-05656 , 2022 WL 950980, at *5 (S.D.N.Y. Mar. 30, 2022) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008)). Although the Court must and does take counsel's experience into account, "[t]he court must also bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Id.* (quotation marks omitted). There are many, experienced attorneys in this District and elsewhere who could and would effectively litigate this case and achieve similar success for $300-$500 per hour. Such a rate is, accordingly, the reasonable one.

counsel and associates, and the prevailing $100 per hour rate to all hours billed by non-attorney staff. The eight (8) hours billed by partners accordingly yields a $4,000 contribution to the adjusted lodestar, the 754.1 hours billed by counsel and associates yields $226,230, and the 135.35 hours billed by non-attorney staff yields $13,535. Plaintiffs' counsel's lodestar after adjustment to prevailing hourly rates in this District is, accordingly, $243,765.

II. Hours Expended

The 93-page, single-spaced billing record submitted by Plaintiffs' counsel is "plagued by myriad shortcomings." *Gonzalez*, 2022 WL 3701096, at *4. Specifically, counsel's lodestar explanation warrants an across-the-board reduction for four reasons: (i) the number of timekeepers staffed was excessive; (ii) the hours billed were duplicative; (iii) time entries were recorded in blocks and with vague descriptions; and (iv) the total number of hours billed were excessive for the tasks completed.

A. Number of Timekeepers

This Court recognized in *Gonzalez* that "staffing this straightforward wage case with 10 timekeepers is a recipe for disaster from a reasonable billing point of view." *Id.* The reasonable billing disaster referred to in *Gonzalez* is only magnified herein where counsel now requests fees for hours billed by *41 different timekeepers*. Counsel is, of course, entitled to staff its matters in any way it deems appropriate. "[B]ut that decision cannot form the basis of a request for reasonable attorneys' fees." *Id.* Indeed, the degree of complexity in this matter varies from that considered by this Court in *Gonzalez* only in that the number of potential beneficiaries of this settlement is greater. Nevertheless, such a distinction does not warrant an increase in staffing by more than a factor of four. Moreover, although the parties agreed to distribute the settlement amount to a Settlement Class of approximately 50 persons, neither a collective action nor a class action was

9

certified by this Court and "Defendants . . . strongly contest that collective or class treatment is appropriate in this case, except for settlement purposes." (Fees Br. at 6). Indeed, prior to settlement, Plaintiffs' counsel litigated solely on behalf of a single named Plaintiff and one additional opt-in Plaintiff.

The Court is simply unable to fathom how it could be prudent to staff forty-one (41) timekeepers for this litigation. Such a decision is indefensibly excessive and unreasonable. Plaintiffs' counsel, recognizing this absurdity, offered to "discount the time billed for all Of Counsel/Associates, Law Clerks/Paralegals, and Clerical Staff who billed less than 10 hours in this matter." (Fees Br. at 11). Doing so at prevailing rates in the District would reduce the lodestar by 28.6 counsel/associate hours (equating to an $8,580 deduction) and 57.5 non-attorney staff hours (equating to a $5,750 deduction). The adjusted lodestar after these deductions amounts to $229,435. This also reduces the number of timekeepers from 41 to 13. Even still, a further reduction is required to make this fee application reasonable.

B. Duplicative Hours

The second issue with respect to counsel's time records is that they reflect significant overlap in tasks. This is an obvious and unavoidable consequence of the overstaffing discussed in the previous section. "In reviewing a fee application, the court 'should exclude excessive, redundant or otherwise unnecessary hours.'" *Lin v. Joe Japanese Buffet Rest. Inc.*, No. 17-CV-03435, 2022 WL 2718584, at *7 (E.D.N.Y. June 7, 2022) (quoting *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999)), *adopted by* 2022 WL 2716487 (E.D.N.Y. July 13, 2022). "[C]ourts may reduce fees 'where the hours billed are disproportionate to the quantity or quality of the attorneys' work.'" *Inga v. Nesama Food Corp.*, No. 20-CV-00909, 2021 WL 3624666, at *15 (S.D.N.Y. July 30, 2021) (quoting *Changxing Li v. Kai Xiang Dong*, No. 15-CV-07554, 2017

10

WL 892611, at *21 (S.D.N.Y. Mar. 7, 2017)). "In making this examination, the district court does not play the role of an uninformed arbiter but may look to its own familiarity with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties." *Tambriz v. Taste & Sabor LLC*, 577 F. Supp. 3d 314, 334 (S.D.N.Y. 2021) (quoting *Gierlinger v. Gleason*, 160 F.3d 858, 876 (2d Cir. 1998)), *adopted by* 2022 WL 282918 (S.D.N.Y. Jan. 31, 2022). To this end, the Court need not conduct a line-by-line analysis. As explained by the Supreme Court:

> trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time.

*Fox v. Vice*, 563 U.S. 826, 838 (2011).

The Court, wary of acting as a "green-eyeshade accountant," will not review Plaintiffs' counsel's hours in a line-by-line fashion. Nevertheless, the following examples highlight the duplicative nature of the hours billed. Between February 21, 2020 and April 17, 2020, no fewer than ten (10) timekeepers worked on drafting the complaint and first amended complaint. Between August 10, 2020 and August 27, 2020, no fewer than seven (7) different timekeepers worked on responding to Defendants' five-page motion to dismiss pre-motion conference letter. Between October 14, 2020 and January 29, 2021, no fewer than nine (9) timekeepers worked on the preliminary stages of discovery, drafting scheduling orders, interrogatories, requests to admit, and documents requests. Indeed, from December 21, 2020 to January 29, 2021, six (6) timekeepers worked on a letter to the Court requesting an extension of discovery deadlines. Forty-two (42) billing entries were dedicated to this task, resulting in 26.6 hours spent drafting a 3.5-page letter

about discovery deadlines.[5] (*See* Doc. 48). Between March 17, 2021 and April 28, 2021, five (5) timekeepers spent 93.6 hours across 46 billing entries preparing for two Rule 30(b)(6) depositions, even though the depositions themselves only took 16.1 hours. Between December 10, 2021 and March 18, 2022, 61 billing entries from seven (7) different timekeepers referenced Defendants' Rule 56.1 statement, accounting for 68.1 hours spent on a document that was never finalized and was to be no longer than 25 pages in length. (*See generally* Billing Records).

The Court, to account for this duplication, has discretion to apply an across-the-board reduction to the hours expended. *See Nikonov v. Flirt NY, Inc.*, No. 19-CV-07128, 2022 WL 1443429, at *2 (S.D.N.Y. May 6, 2022) (noting that "[d]istrict courts have ample discretion in assessing the extent of staffing that is appropriate for a given case," and "should reduce the hours actually expended to account for duplicative or repetitive work" (internal citations and quotation marks omitted)); *Perry v. High Level Dev. Contracting & Sec. LLC*, No. 20-CV-02180, 2022 WL 1018791, at *14 (E.D.N.Y. Mar. 16, 2022) ("Where time entries are vague, duplicative, or otherwise inadequate, a court may make an across-the-board reduction or percentage cut, in the amount of hours." (internal quotation marks omitted)), *adopted by* 2022 WL 1017753 (E.D.N.Y. Apr. 5, 2022); *Gonzalez v. Scalinatella, Inc.*, 112 F. Supp. 3d 5, 29 (S.D.N.Y. 2015) (noting that "[t]his analysis takes into consideration overstaffing, the skill and experience of the attorneys, as well as redundant, excessive, or unnecessary hours"); *Siegel v. Bloomberg L.P.*, No. 13-CV-01351, 2016 WL 1211849, at *13 (S.D.N.Y. Mar. 22, 2016) ("There is also no question that courts routinely apply percentage reductions to requested attorneys' fees based on the performance of

---

[5] Additional hours were billed reviewing Defendants' response to this letter, meeting and conferring, and participating in a conference call with the Court. The Court ultimately granted a continuance of 90 days on February 23, 2021. (Min. Entry Feb. 23, 2021).

inefficient, duplicative, or unnecessary work."). A further reduction for duplicative hours is therefore warranted.

### C. Vague and Block-Billed Hours

A review of Plaintiffs' counsel's time records reveals occasional, albeit not pervasive, resort to "block billing." Without calling out specific attorneys, the Court finds that it is sufficient to note that various timekeepers would attribute large blocks of time—ranging up to 11.5 hours—to individual tasks such as "drafting," "reviewing," or "researching." While this billing practice "is not per se prohibited . . . where such entries make it hard to discern the reasonableness of time allotted to a given task, courts do consider its prevalence in deciding whether reduction is appropriate." *Mayo-Coleman v. Am. Sugars Holding, Inc.*, No. 14-CV-00079, 2019 WL 1034078, at *5 (S.D.N.Y. Mar. 5, 2019); *see also Shanfa Li v. Chinatown Take-Out Inc.*, No. 16-CV-07787, 2020 WL 7647178, at *5 (S.D.N.Y. Dec. 23, 2020). This practice "is most problematic where large amounts of time (e.g., five hours or more) are block billed; in such circumstances, the limited transparency afforded by block billing meaningfully clouds a reviewer's ability to determine the projects on which significant legal hours were spent." *Cruz v. Space NY 50th St LLC*, No. 17-CV-04936, 2019 WL 4061492, at *5 n.11 (S.D.N.Y. Aug. 28, 2019) (quoting *Beastie Boys v. Monster Energy Co.*, 112 F. Supp. 3d 31, 53 (S.D.N.Y. 2015)).

There are at least 22 distinct entries for 5.00 hours or more—accounting for 180.3 (i.e., 20.1%) of the hours billed. (*See* Billing Records). Here again, "where counsel relies on . . . block billing practices which make it difficult for a court to assess reasonableness, an across-the-board fee reduction is warranted." *Avedana v. Casa Ofelia's Bakery LLC*, No. 20-CV-02214, 2021 WL 4255361, at *16 (E.D.N.Y. Aug. 19, 2021), *adopted by* 2021 WL 4248857 (E.D.N.Y. Sept. 17, 2021); *see also Li v. Ichiro Sushi, Inc.*, No. 14-CV-10242, 2022 WL 1137094, at *2 (S.D.N.Y.

Apr. 16, 2022) ("Reductions to block billing are appropriate when five or more hours are billed together creating 'an unacceptable risk that the aggregated total exceeded the reasonable hours worked on compensable tasks.'" (quoting *Benihana, Inc. v. Benihana of Tokyo, LLC*, No. 15-CV-07428, 2017 WL 6551198, at *3 (S.D.N.Y. Dec. 22, 2017)).

Relatedly, counsel's billing entries are often vague, precluding the Court from determining the reasonableness of any given entry. For example, 91 billing entries reference "emails" and 111 reference "correspondence," often without identifying the parties thereto and occasionally neglecting to state the subject. (*See generally*, Billing Records). When encountering such vagaries, again "courts routinely apply across-the-board reductions . . . ." *Diaz v. KC Plumbing, LLC*, No. 19-CV-04321, 2021 WL 7500316, at *15 (E.D.N.Y. Mar. 1, 2021); *see also Inga*, 2021 WL 3624666, at *15 ("[A] court may reduce the fees requested for billing entries that are vague and do not sufficiently demonstrate what counsel did." (internal quotation marks omitted)); *Espinosa v. Perez*, No. 18-CV-08855, 2020 WL 2950978, at *2 (S.D.N.Y. Jan. 27, 2020) (explaining that "[a] billing entry is 'vague' if it 'lacks sufficient specificity for the Court to assess the reasonableness of the amount charged in relation to the work performed'" (quoting *Handschu v. Special Servs. Div.*, 727 F. Supp. 2d 239, 250 (S.D.N.Y. 2010), *adopted by* 2020 WL 1130743 (S.D.N.Y. Mar. 9, 2020)). A further reduction for vague entries and block billing is required.

D. <u>Total Number of Hours Spent</u>

Plaintiffs' counsel spent 897.45 hours on this matter, which the Court finds to be unreasonable in and of itself. This issue may be attributable to previously discussed overstaffing and duplication of work, or to other inefficiencies. This was a wage-and-hour case, pressed on behalf of two individuals (until settlement), by an experienced labor law firm. Plaintiffs' counsel, as discussed *supra*, reports that their time consisted of: (i) preparing complaints; (ii) opposing a

14

motion to dismiss; (iii) responding to a Rule 56.1 statement; (iv) preparing discovery requests; (v) responding to discovery requests; (vi) preparing and responding to discovery disputes; (vii) defeding Plaintiff's deposition; (viii) taking five other depositions; and (ix) preparing settlement documents. (*See* Fees Br. at 9). The settlement, according to Plaintiffs' counsel, represents about 20% of what Plaintiffs would have obtained if they were entirely successful after a full trial on the merits. These tasks should not require 897.45 hours to perform effectively. Some of Plaintiffs' counsel's excessive hours have already been detailed herein—for example, spending 26.6 hours drafting a 3.5 page letter about discovery deadlines—but even at a broader level with regard to the general descriptions above, the Court notes that it should not have taken counsel anywhere near that amount of time.

A comparison to similar wage and hour cases emphasizes that the total number of hours spent in this case was excessive. *See, e.g., Gonzalez*, 2022 WL 3701096, at *6 (finding 914.2 hours excessive); *Gao v. Jian Song Shi*, No. 18-CV-02708, 2021 WL 1949275, at *19 (E.D.N.Y. Apr. 30, 2021) (finding 151.80 hours reasonable where, in a one-plaintiff case, "[c]ounsel engaged in extensive discovery, including multiple depositions, and the case survived summary judgment"), *adopted sub nom. Bin Gao v. ABC Corp.*, 2021 WL 1946322 (E.D.N.Y. May 15, 2021); *Garcia-Severino*, 2020 WL 7239678, at *6 (finding $46,263.75 request unreasonable in an uncomplicated one-plaintiff case following a "few-hour" bench trial); *Espinosa*, 2020 WL 2950978, at *3 (concluding, after a one-day bench trial, that 195.20 hours was reasonable in a one-plaintiff case); *Sai Qin Chen v. E. Mkt. Rest., Inc.*, No. 13-CV-03902, 2018 WL 3970894, at *4 (S.D.N.Y. Aug. 20, 2018) ("Considering this action involved *seven* different plaintiffs, *extensive* motion practice and discovery, multiple depositions, and *a three-day trial*, 453.93 hours spent on this litigation is reasonable." (emphasis added)).

Taking into account all relevant factors under applicable law, the shortcomings outlined above, the fee applications granted in comparable litigation, and the Court's own forty years of litigation experience, a 40% reduction of Plaintiff's counsel's hours is reasonable. *See, e.g., Gonzalez*, 2022 WL 3701096, at *6 (applying a 50% reduction); *Dillatoro v. D'Onofrio*, No. 16-CV-00254, 2022 WL 2467573, at *4 (E.D.N.Y. May 25, 2022) (recommending an "across-the-board reduction of 50% of the hours billed by plaintiffs' counsel"); *Agureyev v. H.K. Second Ave. Rest., Inc.*, No. 17-CV-07336, 2021 WL 847977, at *12 (S.D.N.Y. Mar. 5, 2021) ("To bring the hours expended into a reasonable range, '[c]ourts in this District have applied percentage reductions of up to fifty percent.'" (quoting *Williams v. Metro-N. R.R. Co.*, No. 17-CV-03847, 2018 WL 3370678, at *12 (S.D.N.Y. June 28, 2018) (alteration in original)); *Lopez v. 1923 Sneaker, Inc.*, No. 18-CV-03828, 2021 WL 1845057, at *11 (E.D.N.Y. Mar. 5, 2021) ("One acceptable method for 'trimming the fat' from a fee application, and one that consumes fewer judicial resources than a painstaking review of each time-entry, is for the court to impose an 'across-the-board percentage' cut of the total amount of time claimed." (quoting *Fundora v. 87-10 51st Ave Owners Corp.*, No. 13-CV-00738, 2015 WL 729736 at *2 (E.D.N.Y. Feb. 19, 2015)), *adopted by* 2021 WL 1259623 (E.D.N.Y. Apr. 6, 2021); *cf. Alicea v. City of New York*, 272 F. Supp. 3d 603, 612 (S.D.N.Y. 2017).[6]

---

[6] The Second Circuit recently reaffirmed that, in order "[t]o address . . . redundancy or vagueness, 'the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application.'" *Raja v. Burns*, 43 F.4th 80, 87 (2d Cir. 2022) (quoting *Lilly v. City of New York*, 934 F.3d 222, 234 (2d Cir. 2019)). The Second Circuit, in that case, found that the trial court erred in applying an across-the-board reduction of 40% to the attorneys' fees sought. *Id.* at 91. That case is readily distinguishable from this case in that it involved a total of only *189* hours of work (about 21% of the hours claimed here).

A 40% reduction of the adjusted lodestar brings the reasonable value of Plaintiffs' counsel's work prior to August 27, 2022 to $137,661. The Court finds that this amount is a reasonable fee to award to Plaintiffs' counsel. *See 136 Field Point Circle Holding Co. LLC v. Razinski*, No. 19-CV-05656, 2022 WL 950980, at *6 (S.D.N.Y. Mar. 30, 2022) ("The most useful starting point for determining the amount of a reasonable [attorney's] fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.") (quoting *Henley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

III. Costs

The Court has reviewed Plaintiffs' counsel's request for the reimbursement of costs spent in the litigation and finds that it is reasonable. Counsel seeks reimbursement for $15,652.47 in various costs, the largest of which include amounts paid for deposition transcripts. (*See* Cost Report).

## CONCLUSION

Plaintiffs' request for attorneys' fees and costs is GRANTED IN PART. Plaintiffs' counsel is awarded $137,661 in attorneys' fees along with $15,652.47 in costs for a total recovery of $153,313.47.

The Clerk of the Court is respectfully directed to close this case.

Dated: White Plains, New York
       March 10, 2023

**SO ORDERED:**

_____
PHILIP M. HALPERN
United States District Judge

17